'(December 12, 1891.)'

## ORR v. STATE BOARD OF EQUALIZATION.

[28 Pac. 416.]

CITIZEN OR TAXPAYER MAY BRING SUIT TO REVIEW ACTION OF EQUALIZATION BOARD—JUDICIAL FUNCTIONS—CHANGING ASSESSED VALUATION.

TAXPAYER MAY BRING SUIT.—Every citizen and taxpayer of the state has the right to bring a proper suit to determine whether any board or officer having any authority connected with the levy and assessment of taxes has performed his duties as the law requires.

BOARD OF EQUALIZATION EXERCISES JUDICIAL FUNCTIONS.—The state board of equalization, in exercising the functions conferred upon it by law, is exercising judicial functions.

STATE BOARD CANNOT CHANGE VALUATION UPON CLASS OR CLASSES OF PROPERTY.—The statute does not authorize the state board of equalization to raise or diminish the valuation put upon any class or classes of property, nor to fix the valuation of any class of property, but may raise or diminish the aggregate valuation of the property of any county by such percentage as justice may require.

(Syllabus by the court.)

PETITION of Samuel Orr for a writ of *certiorari*.

T. M. Stewart and Smith & Smith, for Petitioner.

A taxpayer has the right to prosecute this action. (*Maxwell v. Board,* 53 Cal. 389; *Collins v. Davis,* 57 Iowa, 256, 10 N. W. 643.) The remedy by *certiorari* is the proper one to set aside the action of the board of equalization where it is void for want of jurisdiction. (Rev. Stats., sec. 4962 et seq.; *People v. Goldtree,* 44 Cal. 323-325; *Mayor etc. v. Davenport,* 92 N. Y. 604; *Royce v. Jenney,* 50 Iowa, 676; Cooley on Taxation, 758, 759.) The power of the state board is limited to an equalization of values as between counties, and must be made by comparing the values returned from the respective counties with each other, and they have no authority to alter or change the individual assessments or the assessed valuation of different classes of property. (*Wells, Fargo & Co. v. Board of Equalization,* 56 Cal. 194; *People v. Sacramento Co.,* 59 Cal. 321; *San Francisco R. R. Co. v. State Board of Equalization,* 60 Cal. 12; *People v. Dunn,* 59 Cal. 330; *Baldwin v. Ellis,* 68 Cal. 495, 9 Pac. 652.) The state board of equalization has nothing to do with the individual assessments, and cannot alter by either adding to or subtracting from the amounts assessed to various classes of property, or to individual taxpayers. (*Tweed v. Metcalf,* 4 Mich. 579; *Boyce v. Sebring,* 66 Mich. 210, 33 N. W. 815; *Silsbee v. Stockle,* 44 Mich. 561, 7 N. W. 160, 367.) The property of the district must be treated in the aggregate by the state board. (*Getchell v. Supervisors,* 51 Iowa, 108, 50 N. W. 574; *Braden v. Trust Co.,* 25 Kan. 362; *People v. Hadley,* 76 N. Y. 337.)

George H. Roberts, Attorney General, for Respondent.

MORGAN, J.—This is the petition of Sample Orr, who is a citizen and taxpayer of Bingham county, and beneficially interested in the matter set forth in the petition. He alleges that the persons above named constitute the state board of equalization, and charges on information and belief that the said board, on the eighteenth day of September, 1891, and on subsequent days, having under consideration the value of real and personal property among the several counties and towns of the state of Idaho, the same being a judicial matter, and the said board exercising judicial functions in that behalf, without authority of law, and in excess of the jurisdiction conferred on it by law, added to the valuation of the sheep of said Bingham county an amount sufficient to fix the valuation thereof at the sum of two dollars and fifty cents per head. That said board, in like manner, and without authority of law, and in excess of its jurisdiction, on the twenty-first day of September, 1891, by order, added to the valuation of the cattle of said Bingham county, for purposes of taxation of the same, a percentage of ten per cent on the assessed valuation thereof, as returned by the assessor of said Bingham county. That the said board, sitting for the purpose hereinbefore set forth, without authority of law, and in excess of any jurisdiction conferred upon it, did order and adjudge that the Utah and Northern Railway, from Pocatello northward to the state line between Idaho and Montana, should, for the purposes of taxation, be a branch road, and that the valuation thereof should be reduced from $8,000 per mile to $5,000 per mile for each and every mile thereof. That said board, sitting as aforesaid, did on the twenty-first day of September, deduct from the valuation of the part of the Oregon Short Line Railway lying in said county, and from a portion of the Utah and Northern Railway lying south and east of Pocatello, as fixed by the assessor of said county, and not changed by any county board of equalization, the sum of $1,000 per mile for each and every mile thereof. That each and all of these changes so made were by the board of equalization certified to the auditor of said Bingham county by the secretary of said board. That affiant has no appeal from said action of said board, and has no other plain, adequate, and speedy remedy at law. A writ of review is prayed for and

issued, requiring the said board of equalization to return to the supreme court all the proceedings concerning said additions to and deductions from the assessed valuations of said property taken by and remaining before said board, and for other relief. Upon the return of this writ the matter came on for hearing in the supreme court. The first matter to be considered by the court is the question as to whether a citizen and taxpayer is authorized to bring this suit for the purpose of determining whether the state board of equalization has, in the matters herein set forth, acted in excess of the jurisdiction conferred upon it by law.

In the case of *Maxwell v. Board,* 53 Cal. 391, the board of supervisors of said county, without advertising for bids for printing, or giving any notice whatever that said board would entertain or receive sealed proposals or contracts for the county printing for Stanislaus county, entered into a contract with the "Stanislaus County Weekly News," by which said board agreed to advertise all the reports, statements and advertisements of the officers of said county in the said "Stanislaus County Weekly News" at a rate fixed in said contract. Petitioner further alleged that the said contract was made without giving any notice, public or otherwise, that such printing would be let by the county through its board of supervisors to the lowest bidder, or would be let at all. All of which was contrary to law. After said order had been made by the board, the said contract entered into, the plaintiff in this case, Charles Maxwell, filed this petition as a citizen and taxpayer of the said county to annul and set aside said contract. The first question coming before the court for decision was as to whether the petitioner had the right to apply for the writ. The court, McKinstry, J., says, in discussing this question: "The neglect of a public officer to discharge a public duty may affect the interest of every taxpayer, but such result would, in ordinary cases, be uncertain, and dependent upon contingencies. When, however, a public board or officer has exceeded the limited powers conferred by law, and the direct consequence of such excessive use of authority must be to add to the burden of local taxation, it clearly appears that, unless the act *ultra vires* be annulled, each taxpayer must suffer injury common in character,

but special in amount or degree. It would seem that one thus directly affected should be entitled to a remedy, and our conclusion is that the petitioner was authorized to commence his proceeding." It will be seen that in the above case it had not yet been determined that the contract for the printing described could have been let to any other parties for a less amount per annum, and therefore it is uncertain whether the burden to the taxpayer would be greater or less under this contract; but because the board had exceeded its jurisdiction in making the contract the court decides that a citizen and taxpayer is authorized to bring suit. The case at bar is precisely a parallel case. It is alleged that the state board of equalization, in excess of the jurisdiction conferred on it by law, has reduced the valuation of a certain class of property in said county, and has increased the valuation placed upon other certain classes of property by the local assessor. It is uncertain whether the burden of taxation to the individual taxpayer, not owning cattle or sheep, or a stockholder in a railroad corporation, is greater or less than it would have been had these changes not been made, nor, in our view, is it necessary for the taxpayer or this court to enter into a lengthy mathematical calculation to ascertain this fact. Large reduction has been made in the assessed valuation of railroad property in said county, and considerable increase has been made in the valuation of cattle and sheep. Whether the aggregate increase of valuation in the county is equal to the aggregate decrease in such valuation, or is greater or less, we are unable to say; but every citizen and taxpayer of the state has the right to insist that every board or officer having any authority connected with the levy and assessment of taxes shall, in the exercise of his duties, pursue the methods pointed out by the statute. (*Maxwell v. Board, supra.*) The state board of equalization, in exercising the functions conferred upon it by law, was exercising judicial functions. (*People v. Goldtree,* 44 Cal. 323; *Mayor v. Comptroller,* 92 N. Y. 604.) It is alleged in the petition that said board, in performing its duties under said act in the matter hereinbefore mentioned, exceeded its jurisdiction.

There is no method of appeal pointed out by the statute to secure a review of the action of said board. The writ of *cer-*

*tiorari* is the proper and the only means of bringing such action before this court for review. (Idaho Rev. Stats., sec. 4962; Desty on Taxation, 631.)    The matters contained in the petition for the writ of *certiorari* and the answer of the board of equalization thereto are therefore properly before this court. It appears by the return made by the state board of equalization to the writ of *certiorari* issued in this case that the said board, being in regular session, on the eighteenth day of September, 1891, made and entered in their records the following order, to wit: "On motion, it was ordered that the assessed valuations of the main lines of the Oregon Short Line Railway Company, the Union Pacific Railroad Company's System, the Northern Pacific Railroad Company, and the Utah and Northern Railroad Company, be fixed at the uniform valuation of $7,000 per mile throughout the several counties of the state of Idaho, and that wherever the assessment exceeds or is less than said sum of $7,000 per mile, the said valuation be decreased or increased (as the case may be) by such a percentage as shall fix the valuation of the mileage of said main lines at $7,000 per mile.    On motion it was ordered that the equalized valuation of all the telegraph lines in the several counties of the state of Idaho (except the Caldwell and Silver City line) be fixed as follows: One wire, per mile, eighty dollars; each additional wire, per mile, fifteen dollars.    And wherever the assessment appears to be greater or less than said rates, that the proper percentage be added or deducted therefrom to correspond with said rates."    On September 21, 1891, the following order was made: "On motion, it was ordered that that portion of the Utah and Northern Railroad Company extending from Pocatello, Idaho, northerly to the boundary line between the states of Idaho and Montana, be considered a branch line of railway, and that the equalized valuation thereof be fixed at $5,000 per mile."    On the same day the following order was made: "On motion, it was ordered that the following rate of percentage be added to the assessed valuation of cattle in the following named counties, viz.: Bingham county, ten per centum."    On September 22, 1891, the following order was made: "On motion, it was ordered that the assessed valuation of sheep be equalized in the counties of Ada, Alturas, Bear Lake, Bingham, . . . . by add-

ing to the *per capita* assessed valuation in said several counties such a percentage as shall make the *per capita* equalized valuation the sum of two dollars and fifty cents." A number of changes were made in the valuation of property in other counties, which are not recited here, such recitals being unnecessary in the determination of this case.

On the twenty-second day of September, the secretary of said board was instructed to certify to the auditors of the several counties the changes that have been made by this board, the character of such changes in the several classes of property assessed, which certificate shall contain the following clause: "The county auditor of —— county is hereby informed by the state auditor that the state board of equalization have made the following changes in the assessed valuation of the following classes of property returned by the county auditor (here state changes) ; and the said county auditor is hereby instructed to increase or diminish (as the case may be) the assessed valuation of said classes respectively as hereinbefore shown, by a proper percentage, to conform in valuation to the rates herein fixed by said board as the equalized valuation thereof at the regular meetings of said board on the eighteenth, nineteenth, twenty-first, and twenty-second days of September, A. D. 1891; and, where railroads are concerned, said county auditor is further instructed that this equalization is to be held as including all railroad property of every kind, including rolling stock, improvements that are situated on the right of way. Railroad lands outside the right of way are to be separately assessed as heretofore, except in cases where acre lands in the county may have been increased in valuation as above noted, in which case their valuation is changed the same as other acre property." In pursuance of this order of the board the following letter of instructions was sent by the state auditor to the county auditor of Bingham county:

"Office of the State Board of Equalization.

"Boise City, Idaho, Sept. 23d, 1891.

"Certificate of Changes in Assessed Valuation.

"The county auditor of Bingham county is hereby informed by the state auditor that the following changes have been made

by the state board of equalization in the assessment of the following classes of property returned to said board by said county auditor, viz.: The assessed valuation of the Utah and Northern main line, being that portion lying south and east of Pocatello, has been changed to $7,000 per mile; that portion of the said main line from Pocatello to the boundary line between the states of Idaho and Montana has been changed to $5,000 per mile; and the assessed valuation of the main line of the Oregon Short Line Railway Company has been reduced to $7,000 per mile. The assessed valuation of cattle has been increased ten per cent per capita. The assessed valuation of sheep has been changed to two dollars and fifty cents per capita. The assessed valuation of telegraph lines has been changed to eighty dollars per mile for one wire and to fifteen dollars per mile for each additional wire. Said county auditor is instructed to increase (as the case may be) by proper percentage the assessed valuation of the classes hereinbefore shown, to conform in valuation to the rates herein fixed by said board as the equalized valuation thereof at the regular meeting of said board on the eighteenth, nineteenth, twenty-first and twenty-second days of September, A. D. 1891; and, where railroads are concerned, said county auditor is instructed that this equalization is to be held as including railroad property of every kind, including rolling stock and improvements that are situated upon the right of way. Railroad land outside the right of way, and all improvements not upon the right of way, are to be separately assessed as heretofore, except in cases where acre lands in the county may have been increased or diminished in valuation as above noted, in which case their valuation . . . . the same as other acre lands.

"Witness my hand and official seal, this 23d day of September, 1891.

"[L. S.]                               SILAS W. MOODY,
                                     "State Auditor of Idaho."

The constitution (section 5, article 7) has the following provision: "All taxes shall be uniform upon the same class of subjects within the territorial limits of authority levying the tax." This provision of the constitution is self-acting, and applies to

all officers and boards that have anything to do with the levy, and assessment of taxes upon all classes of property. It is a requirement of the constitution, and its effects may be illustrated as follows: The board of commissioners at the meeting, when authorized so to do, levy for all county purposes a tax of two and a half per cent upon all classes of property subject to taxation in the county. This is then a uniform rate of taxation to the extent of the territorial limits of the county. The assessor then values all the stock cattle, numbering them, of A, B, and C, who are taxpayers of said county, at the rate of twelve dollars per head. This would be a uniform valuation as to the three individuals and as to this class of stock. If the same valuation was put upon the same class of stock substantially throughout the county, it would be a uniform valuation of this class of property in the county, and therefore in accordance with the provisions of the constitution. The same may be said of all classes of property. The board of county commissioners of the county is by law constituted a board of equalization for the county. This board is given plenary powers. They may correct any valuation by adding or deducting such sum as may be necessary to make it conform to the actual cash value. (Idaho Rev. Stats., sec. 1476.) They may direct the assessor to assess any taxable property that has escaped assessment, increase any valuation, or add to the amount, number, or quantity, or property of any individual or corporation within their jurisdiction. They may make and enter new assessments. (Rev. Stats., sec. 1483.) In short, they may, in the manner directed by the statute, enforce the assessment of all property within the county at a uniform valuation. It may still happen that all the property of Bingham county is valued at one-third of its real cash value, although this would be in direct violation of the statute. For instance, stock cattle are valued at five dollars per head, and in Oneida county the same class of property is valued at ten dollars per head. Evidently, as between counties, the commissioners can in no manner compel a uniformity of valuation of the same classes of property, as the jurisdiction of each board extends only to the limits of its own county. Has the state board power or authority in any way to compel a uniformity of

valuation between and among the several counties of the same classes of property, or has this board the power to say that the valuation of cattle in Bingham county shall be increased ten per cent and in Oneida county the valuation of the same class of property shall be decreased ten per cent? If they can lawfully do this, then they can go on, and do the same with any and all classes of property throughout the state. This the board has assumed to do, as appears by the copy of their record as above set forth. Further, they have declared the line of railroad running north from Pocatello to the Montana line to be a branch line, and have fixed the valuation thereof at five thousand dollars per mile, without any reference to any rate of percentage.

The state board of equalization is wholly the creature of the law. It has no power or authority except that which is given by the act of March 14, 1891. (1st Sess. Laws, 227.) That act, so far as it relates to the power and jurisdiction of the board, is as follows: "Sec. 2. The board shall have the power: 1. To prescribe rules for its own government and for the transaction of its business; 2. To prescribe rules and regulations, not in conflict with other provisions of law, to govern county boards when equalizing, and assessors when assessing; 3. To call before it, or before any member thereof, any officers of the county, and to require them to produce any public records in their custody; 4. To issue subpoenas for the attendance of witnesses or the production of books before the board, or any member thereof, to raise or diminish the valuation of the several counties. Sec. 3. The board shall meet at the state capitol on the first Monday in September in each year. Sec. 4. The governor shall be chairman, and the auditor, by virtue of his office, shall be secretary. The governor and auditor, with any other member of the board, shall constitute a quorum for the transaction of business. Sec. 5. The state auditor, by virtue of his office, shall lay before the board abstracts received by him from the county auditors, and the board shall proceed to equalize the valuation of real and personal property amongst the several counties and towns in the following manner: 1. They shall add to the aggregate valuation of real and personal property of each county which they believe to be

valued below its proper valuation such percentage in each case as will raise the same to its proper valuation; 2. They shall deduct from the aggregate valuation of real and personal property of each county which they believe to be valued above its proper valuation such percentage in each case as will reduce the same to its proper valuation." The first sentence of the above statute necessary to consider is the last clause of the .fourth paragraph of section 2, which is: "The board shall have power to raise or diminish the valuation of the several counties." How? In what manner? Section 5 gives the only direction that is given in the statute as to the manner in which this is to be done, as follows: "The board shall proceed to equalize the valuation of the real and personal property amongst the several counties and towns in the following manner: 1. They shall add to the aggregate valuation of real and personal property of each county which they believe to be valued below its proper valuation such percentage in each case as will raise the same to its proper valuation; 2. They shall deduct from the aggregate valuation of real and personal property of each county which they believe to be valued above its proper valuation such percentage in each case as will reduce the same to its proper valuation." No power whatever is given to the board to raise or diminish any class or classes of property by any percentage or in any manner whatever; no power is given it to assess or fix the value of any kind of property; no power is given the board to fix the value of any railroad; and no power is given by said statute to said board to declare any portion of any railway a branch line or main line. It is not intended by this opinion to intimate that the value of railroad property, as fixed by the state board of equalization, is too high or too low. We believe that railroad property, like all other property, should be valued at its actual cash value, and, like all other property, its capacity to produce profit should be taken into consideration. It is profitless to multiply words to show what the board is not empowered to do. What they can do may be given in few words. They may add to or deduct from the aggregate valuation of real and personal property of a county by a certain percentage. The statute, having specified what they may do, necessarily excludes every other

power.  It may be granted without argument that this will not enable the board to fix a uniform rate of assessment upon the different classes of property throughout the state.  It may be granted that the assessor of one county may value cattle at ten dollars per head and the assessor of an adjoining county may value the same class of property at fifteen dollars per head, and there is no remedy, within the power of the state board, except to raise or lower the aggregate valuation of all the property in the county.  If it was intended by the legislature to give the board of equalization the power to raise or lower certain classes of property in the county which would seem to be desirable, it has utterly failed to do so.  This court cannot add to or take from the words of the statute.  If the statute was uncertain, indefinite, or ambiguous, the court, by a proper construction, might be able to render it certain, definite and unambiguous.  These words cannot be misunderstood, and will admit of no construction to change their meaning.

The respondents cite as a justification of their action in the case at bar the statute relating to the state board of equalization, and decisions thereunder, of the state of Illinois, claiming that said statute is similar to our own, and therefore the power of the state board in this state is similar to that in Illinois.  The sections of the Illinois statute in relation to the power and jurisdiction of said board are as follows (Ill. Laws 1871-72, sec. 104, p. 27):

"Sec. 104.  It shall be the duty of the secretary of said board, under the direction of the auditor of public accounts, to compile the abstracts of assessments received from the county clerks into tabular statements convenient for the use of the board, which statements and the original abstracts shall be submitted to the board on the first day of its session in each year, or as soon thereafter as the board is organized.  The secretary shall perform such duties in vacation as shall be assigned to him by the board."

"Sec. 106.  Said board, in equalizing the valuation of property as listed and assessed in the different counties, shall consider the following classes of property separately, viz., personal property, railroad and telegraph property, lands and town

and city lots, and, upon such consideration, determine such rates of addition to or deduction from the listed or assessed valuation of each of said classes of property in each county, or to or from the aggregate assessed value of each of said classes in the state, as may be deemed by the board to be equitable and just; such rates being in all cases even and not fractional; and such rates, as finally determined by said board, shall not be combined.

"Sec. 107.   In equalizing the value of personal property between the several counties, said board shall cause to be obtained the state averages of the several kinds of enumerated property from the aggregate footing of the number and value of each; and the value of the several kinds of enumerated property in each county shall be obtained at those average values; and the value of the enumerated property thus obtained, as compared with the assessed value of such property in each county, to be added to or deducted from the total assessed value of personal property in each county; provided, that whenever in the opinion of the board it is necessary to a more just and equitable equalization of personal property that a rate per cent be added to or deducted from the value thus obtained in any one or more of the counties, said board shall have the right so to do; but the rate per cent hereinbefore required shall first be obtained to form the basis upon which the equalization of personal property shall be made."

"Sec. 111.   Lands shall be equalized by adding to the aggregate assessed value thereof, in every county in which said board may believe the valuation to be too low, such rate per centum as will raise the same to its proper proportionate value, and by deducting from the aggregate assessed value thereof, in every county in which said board may believe the valuation to be too high, such per centum as will reduce the same to its proper value.   Town and city lots shall be equalized in the same manner herein provided for equalizing lands, and, at the option of said board, may be combined and equalized with lands.

"Sec. 112.   When said board shall have separately considered the several classes of property as hereinbefore required, the results shall be combined into one table, and the same be ex-

amined, compared, and perfected in such a manner as said board shall deem best to accomplish a just equalization of assessments throughout the state, preserving, however, the prin ciple of separate rates for each class of property."

It will be seen that this statute contains a well-considered and carefully worded method of valuation of the different classes of property, both real and personal, and authorizes the board to add to or deduct from any of said classes such sum or sums as would render the assessment in the several counties uniform throughout the state. The statute is about as different from our own as is possible in two statutes relating to the same subject matter, and the authority quoted from *Porter v. Rockford etc. R. R. Co.,* 76 Ill. 561, construing the above statute, is therefore inapplicable to the case at bar.

It is contended also that, the board of equalization having performed the acts complained of, and forwarded the result to the county auditors with directions to make the changes indicated in the assessment list, the presumption is that the changes have been made, and a large portion of the taxes collected, and it is now too late for the board to make any change in the method of the so-called "equalization," and therefore the action of the board should not be declared unlawful. The force of this argument can be better appreciated if we state it thus: If the board has acted without authority of law, and beyond its jurisdiction, yet its acts should be approved, because it is too late this year to pursue the method pointed out in the statute. This argument bears upon its face its own refutation. The petitioner in this case is not seeking to compel the board to perform any act within its jurisdiction, but prays that the acts done by said board in excess of its jurisdiction be declared void. It is therefore considered and adjudged by this court that all the acts complained of in the said petition, to wit: The order of said board of September 18, 1891, fixing the valuation of the main lines of the Oregon Short Line Railway and the Union Pacific Railway system in Bingham county; the order on the same date, fixing the value of all telegraph lines in said county; the order of said board, entered on the twenty-first day of September, 1891, declaring the Utah and Northern Railway, running from Pocatello north to the Mon-

tana line, a branch road, and fixing its value at $5,000 per mile; the order on the same day, adding ten per cent to the assessed valuation of cattle in said county; the order of September 22, 1891, fixing the assessed valuation of sheep in Bingham county at two dollars and fifty cents per head—were each, and all made without authority of law, and void.

Sullivan, C. J., and Huston, J., concur.