No. 758.

## BIGGS *v.* THE BOARD OF COMMISSIONERS OF LAKE COUNTY.

TAXES.—*County Boards of Review.*—*State Board of Tax Commissioners.* —*Judicial Powers.*—*Conclusiveness of.*—*Not Controllable by Courts.*— County boards of review and the State Board of Tax Commissioners are clothed with *quasi* judicial powers in bringing about uniformity and equality of taxation. The acts of these boards are judicial in their character, and their judgments are not open to collateral attack. If errors or irregularities are committed, they must be corrected in the mode pointed out by the statute; and if not so corrected, they are conclusive; for courts have not the power to control their discretion.

From the Lake Circuit Court.

*J. Kopelke,* for appellant.

*J. W. Youche,* for appellee.

LOTZ, J.—The appellant, on June 7, 1892, filed, and presented to the Board of Commissioners of Lake County, her claim for taxes which she alleged had been unlawfully collected from her.

The board refused to allow her claim, and from such order she appealed to the Lake Circuit Court. In said court she filed an amended complaint, and appellee demurred thereto. The court sustained the demurrer, to which ruling the appellant excepted, and, refusing to further amend, the court gave judgment against the appellant. From this judgment the appeal is prosecuted.

The error assigned here is the sustaining of the demurrer to the amended complaint.

Appellant's amended complaint stated, in substance, that she was a tax-payer of the town of Crown Point, and of Lake county; that on the 1st day of April, 1891, she was the owner of personal property of the actual and true

value of no more than seventy thousand four hundred and fifteen dollars ($70,415), and that her property was assessed by the assessor at and for said sum for the purposes of taxation; that no change was made in such assessment, and such amount was placed upon the tax duplicate against her, and taxes computed thereon in the sum of thirteen hundred and thirty-seven dollars and eighty-eight cents, upon which she was compelled to and did pay the county treasurer as and for the April installment, 1891, the sum of nine hundred and fifty dollars and sixty cents.

She further alleges that that sum, by right, not only paid all her taxes for the year 1891, but overpaid the same in the sum of two hundred and eighty-one dollars and sixty cents, which last sum she alleges was wrongfully collected from her; that her property should have been assessed only one-half of the sum put upon the tax duplicate against her, and that the taxes properly chargeable against her should have been only the sum of six hundred and sixty-eight dollars and sixty cents.

Her complaint also shows that the county board of review reduced the valuation of all the real estate in said county, after it had been fixed by the assessors, fifty per centum, and that the valuation of personal property in said county was not reduced, but was permitted to remain as fixed by the assessors; that the State Board of Tax Commissioners confirmed and approved the action of the Board of Review of Lake County in reducing the valuation of real estate in said county; that she appealed from the action of the county board of review, in fixing the amount of the assessment on her personal property, to the State Board of Tax Commissioners, but that her appeal was denied.

It is also alleged that by the reduction of the valuation of the real estate in Lake county, such real estate was

placed at less than one-half of its true, full, fair, cash value; that taxes upon real estate in said county were afterwards computed and paid upon such reduced valuation, and, from these facts, appellant concludes that her property has not been valued equally and uniformly with the other property of said town and county, for the purposes of taxation, but wrongfully assessed too high. The order of the county board of review, fixing the valuation of real and personal property, as set out in the complaint, is as follows:

"The board, after hearing all the complaints, and after due consideration, it was moved by the board to let all recommendations made by the county assessor stand as approved. It was further moved, and carried, to reduce the valuation of all real estate and lots in each township 50 per cent.; this reduction is only to apply on the value of lands and lots. The valuation of personal property is to be left as reported and returned and corrected by the county and township assessors."

By sections 5813, 5814, R. S. 1881, it is made the duty of the board of commissioners of the county to refund, in all proper cases, taxes which have been wrongfully assessed.

Appellant's property was assessed, for the purposes of taxation, under the act of the General Assembly, approved March 6th, 1891 (Act 1891, p. 199). The constitutionality of this act is not questioned, but the contention is that the county board of review by the rule and order above set out, assessed appellant's property higher, in proportion to its actual value, than real estate generally in said county; that this maladministration of the act contravenes section 1, of article 10, of the State constitution, which requires that all property, both real and personal, shall be justly valued and receive a uniform and equal rate of assessment and taxation.

There is no claim that appellant's property was assessed at more than its true cash value, as required by Acts of 1891, section 53, but it is contended that under the order of the board of review real estate is assessed too low, and that the effect of said order is to unjustly discriminate against her personal property, and that as compared with real estate the assessment is too high, unjust, and not uniform.

The act of 1891, *supra*, following the constitution, is pervaded by a spirit of fairness and equality in the assessment of all kinds of property. A county board of review and the State Board of Tax Commissioners are, created and clothed with *quasi* judicial powers, and specially charged with the duty of bringing about uniformity and equality of taxation. The action of these boards is judicial in its character, and their judgments are not open to collateral attack. If errors or irregularities are committed, they must be corrected by the mode pointed out by the statute. If not so corrected, they are conclusive whatever errors may have been committed in the assessment. Courts have no power to control their discretion or take upon themselves the functions of a revising and equalizing board. *Stanley* v. *Supervisors, etc.,* 121 U. S. 535; *Newman* v. *Supervisors,* 45 N. Y. 676.

It is insisted, however, that the order of the board cut off judicial discretion, and that the judgment of the board, in so far as it discriminates against personal property, is void. Appellant relies with great confidence upon the case of *Cummings* v. *National Bank,* 101 U. S. 153, in support of this position.

That case arose under a law of the State of Ohio. That act provided for separate State boards of equalization for real estate, for railroad capital and for bank shares, but

there was no State board to equalize personal property, including all other moneyed capital. The equalizing process, as to all other personal property and moneyed capital, rested with, and ceased with, the county boards.

The assessors of real property and the assessors of personal property and the county auditor (who was required to assess bank shares) all concurred in establishing a rule of valuation by which real estate and personal property (except money) were assessed at one-third of their actual value, and invested capital at six-tenths of its value, and the assessment of the shares of incorporated banks, as returned by the auditor, at about six-tenths of their actual value. The State Board of Equalization increased the value of bank shares to their full cash value. There was a manifest inequality between the assessment of bank shares and all other personal and real property.

The court held that when a rule or system of valuation is adopted by the officers whose duty it is to make the assessment, which is intended to operate unequally, in violation of the fundamental principles of the constitution, and where this rule is applied not solely to one person, but to a large class of persons, equity may properly interfere to restrain the operation of the unconstitutional exercise of power, and that upon the payment of the amount of tax which is equal to that assessed on other property will enjoin the collection of the illegal excess.

That case differs from the one at bar in this respect: There the primary assessment was made by officers exercising purely ministerial functions. Under the rules adopted, an unfair basis was furnished to the reviewing or equalizing boards. Any action that the boards might take under such circumstances could not bring about equality and uniformity of valuation. Here no complaint is made of the action of the assessors in making the primary assessment, but the complaint is against the

board of review. This board of review, under our stat-
ute (Act of 1891, section 115), is clothed with extensive
powers over all kinds of assessments; even to the extent
of setting them aside as to the whole county, and order-
ing a new one taken.

When the board of review made the order reducing
real estate assessments fifty per centum, and left personal
property assessments unchanged, we must presume that
it was necessary to do so in order to equalize the assess-
ments. This act was judicial in its character. If er-
roneous or hurtful, a remedy is given by the act itself.
If the courts can review this act, then they can review
any order made by the board, and assume the functions
of a board of equalization. This is clearly not the pur-
pose of the statute. If appellant has been wronged by
the order, she must right it in the method provided by law.

Appellant also cites *Andrews* v. *King County*, 22 Am.
St. Rep. 136, and insists that it is decisive of the point
in controversy here. We have examined that case. The
act there complained of was done by a ministerial of-
ficer—the assessor—and not by a board of equalization.

We think the demurrer was correctly sustained.

Judgment affirmed.

