Hacker v. Howe.

CHARLES R. HACKER, COUNTY CLERK, ET AL. V. CHURCH
HOWE.

FILED OCTOBER 5, 1904.   No. 13,944.

ERROR to the district court for Nemaha county: WIL-
LIAM H. KELLIGAR, JUDGE.  *Reversed and dismissed.*

*E. B. Quackenbush, Frank N. Prout, Attorney General,*
and *Norris Brown,* for plaintiffs in error.

*E. Ferneau* and *H. A. Lambert, contra.*

By the Court:   The court is unanimously of the opinion
that the judgment of the trial court is erroneous and
should be reversed, which is accordingly done.   An opinion
will be hereafter filed.

Judgment reversed and action dismissed.   Mandate to
issue forthwith.

REVERSED.

The following opinion was filed November 2, 1904:

1. **Equalization of Taxes:** STATE BOARD.  The state board of equaliza-
   tion and assessment, in the equalization of property as between
   different counties, under section 130, article I, chapter 77, Com-
   piled Statutes, 1903, is not required to enter into a formal in-
   vestigation, examine witnesses, etc., in ascertaining the relative
   values of the property of the different counties of the state.   It
   may act upon the abstracts of assessments of the different
   counties and the knowldge of its own membership as to values
   generally.

2. **Findings.**  The trial court having found that the state board acted
   in good faith and without fraud, and the evidence sustaining
   the finding, the elements of bad faith and fraud are eliminated
   from the consideration of the questions arising in the case.

3. **Assessment.**  The values placed on property listed for assessment
   purposes by the county assessor and his deputies are not con-
   clusive and final.   The assessment as finally made is the values
   as found by the assessors and as corrected and equalized by the
   county and state boards of equalization.

28

4. ———. The assessment of property is not final until acted upon by the county and state boards of equalization, and not until the action of the latter is certified to the county clerks of the different counties and by them extended upon the tax rolls.

5. ———. An assessment is an official listing of persons and property, with an estimate of the value of the property of each for purposes of taxation.

6. ———: COLLATERAL ATTACK. The state board, in the equalization of assessments as between different counties, acts in a *quasi* judicial capacity, and the action taken is not subject to collateral attack except upon grounds of fraud or other wrongful conduct equivalent thereto, or for the exercise of power not conferred upon it by law.

7. ———: IMPEACHMENT. The action of the state board in the equalization of assessments as between the different counties in ordering a per centum of increase in the aggregate valuation of some of the counties cannot be impeached in the absence of fraud, bad faith or usurpation of power, by evidence tending to prove that the property in the county affected was assessed by the county authorities at its actual cash value.

8. ———: NOTICE. No notice is required, other than that given by statute, of the time and place of meeting or of action taken by the state board in the equalization of the assessments of property of the different counties so as to conform to law.

9. Constitutional Law. The section of the statute providing for the equalization of the assessments of property as between the different counties by the state board by a per centum of increase or decrease of the aggregate valuations so as to make the same conform to law is not invalid because no provisions are made for an appeal from such action to the courts of the state.

10. ———. An owner is not deprived of his property without due process of law by means of taxation, if he has an opportunity to question its validity or the amount of such tax or assessment at some stage of the proceedings, either before that amount is finally determined, or in subsequent proceedings for its collection.

11. Equalization: STATE BOARD. The state board cannot, under the guise of equalization, raise valuations merely for the purpose of making such increase, but when an increase results incidentally in the equalization of property, so that all property may bear its equitable proportion of the burdens of taxation, such resulting increase is within the legitimate exercise of the power to equalize.

12. ———: ———. The state board of equalization cannot deal with

individual assessments, nor take into consideration inequalities as between individual taxpayers, but it deals only with the values of the taxable property of a county as a whole.

13. ———: COUNTY BOARD. Individual discrepancies and inequalities, the law contemplates, shall be corrected and equalized by county boards of equalization, who are specially empowered to hear complaints and grievances as between individual taxpayers, and to adjust and remedy the same as may be just. A taxpayer failing to avail himself of the opportunity thus presented has no legal ground of complaint because of the action of the state board of equalization in lowering or raising the valuation of all property in a county so as to conform with all other property throughout the state.

14. ———: CONSTITUTIONAL LAW. The fact that an individual taxpayer of a county has returned for assessment and taxation money on hand and in bank at its full face value will not prevent the state board from equalizing the assessment by raising the aggregate value of all property in such county the per centum found necessary to bring it to a uniform standard with all property of the different counties of the state, nor do provisions of this character violate the fundamental law requiring all persons and corporations to pay a tax in proportion to the value of his, her or its property.

15. ———: ———. Such an assessment of money at its legal value, and an order of increase in the value of all property of the county, including such money, can, at most, affect only the one item of property that is assessed in the first instance at its face value.

16. Equity. Whether a court of equity would grant relief from such overvaluation not determined.

17. Injunction. In no event will an injunction lie until taxes legally due on such assessment are paid or tendered.

HOLCOMB, C. J.

The state board of equalization and assessment, acting under the provisions and by the authority of section 130, article I, chapter 77, Compiled Statutes, 1903 (Annotated Statutes, 10529), being a part of the general revenue act, increased the aggregate assessment of several of the counties of the state, including that of the county of Nemaha, which was raised 5 per cent. above the amount as

assessed and equalized by the county authorities. The action thus taken being certified to the county clerk of said county, it became his duty under said section to add to the assessment of each piece or parcel of property assessed in said county an amount equal to the per cent. of increase so directed as aforesaid. The plaintiff in this action brought in the district court for said county an injunction suit for the purpose of restraining the county clerk and his deputy from extending on the tax rolls of said county the percentage of increase to the assessed valuation as certified by the state board of equalization. After joinder of issues and a hearing to the court, the injunction was made perpetual, and the defendants prosecute error proceedings in this court.

The substance of the allegations of the plaintiff's petition on which is. grounded his right to the relief prayed for is to the effect that: (a) The state board of equalization, in ordering the increase complained of, acted arbitrarily, capriciously and fraudulently; (b) that all property, both real and personal, in Nemaha county, had been valued at its true, full and actual cash value, and assessed at one-fifth thereof as provided by law, by the local authorities, and that the proposed per centum of increase would operate to raise the value of all property above its actual cash value, discriminate against the taxpayers of Nemaha county and violate the provisions of the fundamental law which require that all property shall be assessed so that each person and corporation shall pay a tax in proportion to the value of his, her or its property; (c) that no notice of any kind was given to the taxpayers of Nemaha county of the proposed increase, and that no way is provided by which the action of the board can be reviewed in a court of last resort; (d) that the action of the state board of equalization was null and void, because the increase of the aggregate valuation of the several counties as ordered was, in effect, a reassessment of property, and not an equalization thereof, and that said board exceeded its powers and jurisdiction; (e) there are also allegations to be found in the

petition to the effect that two certain taxpayers of the county, who are named, listed and returned for assessment certain sums of money on hand and in bank, which were valued and assessed at their full legal value, and that there was returned for assessment and assessed in said county the aggregate sum of $306,505 in money at its full face value; and that the state board of equalization, knowing such facts, without authority, and in excess of its powers, by said order of increase raised the valuation of such property above its legal and face value, in violation of the provisions of the fundamental law requiring uniformity and equality in the valuation of property taxed for the purpose of raising needful revenues.

The constitutionality of the section under which the state board acted is specially challenged in the petition, but the grounds advanced are substantially the same as those above mentioned as the foundation for maintaining the injunction suit, and will be covered, without particularly referring thereto, in the general discussion to follow.

1. There are found in the petition allegations of a very general character charging that the state board of equalization in ordering the per centum of increase complained of, acted in a capricious, arbitrary and fraudulent manner. The trial court, while its principal finding was general and in favor of the plaintiff in the suit, found specially, "that the state board of equalization and assessment, in directing the increase of five per cent. to the assessed valuation, acted in good faith and without fraud." This finding is amply supported by the evidence, and is the only one that could have been sustained. It is not to be doubted that the state board of equalization, in taking the action and making the order complained of, acted in the utmost good faith, with a view solely of equalizing the assessments of the different counties of the state in the discharge of a duty imposed upon it by law. The board is not under the statute required to enter into a formal judicial investigation of the values of property to be affected by its action

in the discharge of its duties as a board of equalization. It is its duty under the law to adjust and equalize the valuation of real and personal property in the different counties by a per centum of increase or decrease of the aggregate valuation of the county, with the view of apportioning equitably the burden of state government, and, in doing so, each member acts upon his own knowledge of the facts and without requiring other evidence. The fact that valuations are increased or decreased in any one county without the examination of witnesses is immaterial. When the board has before it the abstracts of assessment of the different counties, such as are required to be formulated and furnished for its information under the law, it is in a position to proceed in the discharge of its duties pertaining to the equalization of assessments of the different counties, and is authorized to act upon such infromation and the knowledge of its members as to values of property generally, without further or different information or greater formality. 1 Cooley, Taxation (3d ed.), 784; 1 Desty, Taxation, 505; *People v. Lothrop*, 3 Colo. 428; *Mayor of City of New York v. Davenport*, 92 N. Y. 604; *St. Louis, V. & T. H. R. Co. v. Surrell*, 88 Ill. 535. The question therefore of fraud, arbitrary or capricious action, or other alleged improper motive or conduct on the part of the different members of the board in entering the order complained of, must be eliminated in the consideration of all further questions arising in the case.

2. Broadly stated, the principal ground relied on to maintain the injunction sued for is the alleged fact that all property in Nemaha county was valued by the county authorities at its full and actual cash value, and that the proposed increase ordered by the state board of equalization will result in an overvaluation of property, operate as a discrimination against the taxpayers of the county, in that it compels them to pay taxes on property they do not possess, in violation of the constitutional rule requiring taxation to be according to the value of the property taxed. The weakness of the position assumed lies in the premises

advanced in support of it. It is not conceded that the
property assessed in this county as valued by the county
authorities is assessed at its full value; nor can it be ac-
cepted as a sound proposition that the values placed on
the property listed with and assessed by the county asses-
sor and his deputies are conclusive and binding on the
state board of equalization as being the true and actual
values thereof. The values of property on which taxes
are to be levied are, under the statute, to be determined,
not by the county assessor alone, but only in conjunction
with equalizing boards which are provided for the very
purpose of correcting errors and inequalities in valua-
tions as fixed by the assessor, and to bring all property
values to a uniform standard. It is the duty of the county
assessor and his deputies to list all property in the county
subject to taxation, and value the same in the assessment
thereof at its actual cash value. After the property has
thus been scheduled and assessed and returned to the
county board, it is the duty of the latter, under the pro-
visions of section 121, article I, chapter 77, Compiled
Statutes, 1903 (Annotated Statutes, 10520), to fairly and
impartially equalize the valuation of the personal property
and the real estate by raising or lowering the valuation as
returned by the county assessor, and to hear grievances and
complaints regarding the different assessments returned,
and to review and correct the same as shall appear to be
just; all of which is to be done in the manner provided in
said section. By the section under consideration, after
the forwarding of abstracts of the assessments of the dif-
ferent counties as is provided in the revenue act, it is
made the duty of the state board of equalization, at the
time and place therein stated, to meet for the purpose of
equalizing assessments as between the different counties,
and to examine the abstracts of property assessed for taxa-
tion in the several counties and to equalize such assess-
ments so as to make the same conform to law. For that
purpose, power is given the state board to increase or de-
crease the assessed valuation of any county by a per centum

and to certify the same to the county clerk of the county affected, whose duty it is to add to or deduct from each piece or parcel of property an amount equal to the per cent. of increase or decrease as thus fixed by the state board. The assessment and valuation of property, as well as the subject of taxation generally, is purely a matter for the legislature, whose power in the premises is plenary except as limited by the constitution. By the constitution it is expressly said that the value of property on which taxes are levied shall be determined in such manner as the legislature shall direct. The legislature has provided by statute that the county assessor shall ascertain the value in the first instance, and that the valuation as thus determined is subject to correction and review as between individual taxpayers and taxing districts in the county by the county board of equalization and that the values of the property of the different counties in the aggregate as thus determined may be adjusted and equalized by the state board of equalization, to the end that all property of the different counties may contribute its just and equitable proportion of the public revenues. These several steps, then, it will be observed, are necessary to be taken in order that values may be legally and finally ascertained for the purpose of levying taxes as a means of producing revenues. This method of determining values for purposes of taxation is contemplated not only by the statutory law, but also by the constitution, which in terms confides the subject to the legislative branch of government. That these different steps are all essential to the ascertainment of the true value of property, and the making of a valid assessment, is made manifest by the language of section 132, article I, chapter 77, Compiled Statutes, 1903 (Annotated Statutes, 10531). It is there declared that no assessment shall be deemed final until the action of the state board shall have been had and certified to the county clerks, and by them extended upon the tax rolls, and that the assessment as made and corrected by the county board of equalization and by the state board shall be the final assessment

of property for that year, and taxes for all purposes shall be levied upon such final assessment. An assessment means the determination of the value of a man's property for the purpose of levying a tax; an official listing of persons and property with an estimate of the value of the property of each for purposes of taxation. 3 Cyc. 1111. Wherein, then, may it be said that the state board of equalization has transcended its powers and acted beyond the scope of its authority in regard to the matters complained of? The actions not only of the county assessor in fixing the valuation in the first instance, but also that of the county board of equalization and of the state board of equalization in equalizing as between different counties, are in their nature *quasi* judicial, and are not subject to collateral attack except upon grounds of fraud, actual or constructive, or for the exercise of a power not conferred upon them by statute. In *State v. Savage*, 65 Neb. 714, it is held:

"In assessing property for taxation purposes the board is clothed with *quasi* judicial powers as to the valuation of such property, and when it has once acted on sufficient information, and expressed an honest judgment as to such value, its judgment cannot be controlled by the writ of mandamus." Also "The presumption is that, when an officer or assessing body values property for assessment purposes, he or it acts fairly and impartially in fixing such valuation."

In 1 Cooley, Taxation (3d ed.), 784, it is said:

"Equalization of assessments has for its general purpose to bring the assessments of different parts of a taxing district to the same relative standard, so that no one of the parts may be compelled to pay a disproportionate part of the tax. To accomplish this purpose assessment rolls are equalized by county courts, boards of supervisors or commissioners, and the aggregate of the county assessments by a state board established for the purpose. This is not done by changing individual assessments, but by fixing the aggregate sums for the several districts at what,

in the opinion of the board, they should be, so that general taxes may be levied according to this determination, instead of on the assessor's footings. These boards act judicially in equalizing, and their decision is conclusive. * * * In raising or reducing the assessment of a district, it is sufficient for the board to designate a percentage of increase or reduction."

Under a revenue statute essentially similar to ours in respect of the matter now under consideration, it is said by the appellate court of the state of Indiana:

"County boards of review and the state board of tax commissioners are clothed with *quasi* judicial powers in bringing about uniformity and equality of taxation. The acts of these boards are judicial in their character, and their judgments are not open to collateral attack. If errors or irregularities are committed, they must be corrected in the mode pointed out by the statute; and if not so corrected, they are conclusive; for courts have not the power to control their discretion." *Biggs v. Board of Commissioners*, 7 Ind. App. 142. See also *Jones v. Rushville National Gas Co.*, 135 Ind. 595. Other authorities might be cited without number, but the above are believed sufficient to set at rest the contention that the action of the state board, in regard to the order complained of, can be impeached by an attempt to show that the property in Nemaha county had been by the assessors valued at its full and actual cash value. As well might an issue be raised as to the value placed by the county assessor on the property of each individual taxpayer, and an attempt made to annul the assessment on the ground of overvaluation, which the authorities are all agreed cannot be done. In the absence of fraud, or other misconduct, or arbitrary exercise of power equivalent thereto, the rule is universal to the effect that the discretion of assessing officers and boards of equalization cannot be controlled by the courts in collateral proceedings, nor can errors of judgment and overvaluation in the assessment of property be rightfully reviewed by them in the absence of statutes authorizing

such proceedings. *Loewenthal v. People*, 192 Ill. 222; *New Haven Clock Co. v. Kochersperger*, 175 Ill. 383; *State v. Savage, supra;* 1 High, Injunctions (4th ed.), secs. 490, 493.

3. With reference to the alleged want of notice of the meeting of the state board of equalization, none is required. The section under which the board acted fixes the time and place of the meeting, and this of itself is sufficient notice, even though one were required, to the different counties and all persons interested, of the time and place of such meeting. By this statute all are warned as to when the meeting will occur, and the nature of the action which may be taken in pursuance of the power therein conferred upon the board. The section meets all legal requirements as to public notice, and no additional duty devolves upon the board to notify any of the time and place of its meeting, or of its contemplated action when convened for the purposes contemplated by the statute. *Hallo v. Helmer*, 12 Neb. 87, is a case directly in point. It is there held that where the valuation of property as returned by the assessor as to an entire precinct or tax district is relatively too low or too high, it may be raised or lowered by the board of equalization without notice previously given to the property owners. Citing *Dundy v. Richardson County*, 8 Neb. 508, in support of the rule. Of like effect is 1 Cooley, Taxation (3d ed.), 786; *Spalding v. Hill*, 86 Ky. 656; *State v. Armstrong*, 19 Utah, 117.

Whether or not the action of the state board of equalization in ordering a per centum of increase to the aggregate valuation of the property in the different counties affected by the order may be reviewed by proceedings in error in the courts need not here be determined. In either event, the plaintiff must fail in this action on the merits of the case as disclosed by the pleadings and the evidence. Judgment must go against him regardless of the question. He bases his right to an appeal to the courts, for the purpose of testing the legality of the proceedings of the state board of equalization, on the ground that its action is not review-

able in a direct proceeding, and at the same time complains that his property is being taken without due process of law. These are inconsistent positions. He certainly is not denied due process of law if the courts are open to him in which he may try the question of the scope of action and the power of the state board to equalize the valuation of properties as between the different counties so as to bring about uniformity and equality of taxation. It is not essential, in order to constitute due process of law, that a taxpayer shall have the right to a direct proceeding in the courts to review the action of persons, boards and tribunals empowered to assess property and levy taxes for the purpose of raising revenues for expenses of government. It is not required that judicial proceedings be resorted to in enforcing the levying and payment of taxes. The right to an appeal is purely statutory. 2 Cooley, Taxation (3d ed.), 1393. These are special officers and tribunals within themselves empowered to do and perform all acts necessary and essential in the accomplishment of the collection of the public revenues. Due process of law is observed if, in the different steps taken by the officers and tribunals created by statute, an opportunity is given to an individual taxpayer who may feel aggrieved to be heard with reference thereto, and power is given to redress such grievance as may be right and just. Personal notice is not always essential. Notice given by statute or by publication may be sufficient. An owner is not deprived of his property without due process of law if he has an opportunity to question its validity or the amount of such tax or assessment at some stage of the proceedings, either before that amount is finally determined or in subsequent proceedings for its collection. 1 Cooley, Taxation (3d ed.), 60.

4. Concerning the contention that the state board in respect of the action taken did not equalize but reassessed the property of the several counties, raising the aggregate valuations thereof according to the percentage applied to each county, it may be said that, manifestly, the board has

no power to increase valuations merely for the purpose of making such increase. The limitations of law relative to tax levies, the fixing of valuations and the equalization thereof, cannot be nullified and rendered impotent by an attempt to increase the aggregate of the grand assessment rolls under the guise of equalization. *Poe v. Howell*, 67 Pac. (New Mex.) 62; *State v. State Board of Equalization*, 18 Mont. 473, 46 Pac. 266; 1 Desty, Taxation, 505. But, in the case at bar, we think it clear that the increase result-ing from the action of the state board was purely incidental to a proper equalization of the assessment of the different counties as returned to that body. From the action taken, it is fairly inferable that, in 66 of the 90 counties of the state, property was found to be assessed uniformly and at its actual cash value, while, in 24 counties, the valua-tions placed upon property generally were relatively too low and required, in order that the rule of uniformity might be observed and equality attained, a raise of the aggregate valuation of those increased from two per cent. in one instance to ten per cent. in others. Surely it may not be said that, it having been ascertained that so nearly all of the property of the different counties had been as-sessed at its true value, in order to properly adjust and equalize, there must be a reduction of a certain percentage in this larger number of counties and a corresponding increase and less than was ordered in the smaller number, so that the grand total of the assessment roll should not be disturbed. While a plan or method of raising the value of some of the counties and lowering others may be gen-erally resorted to in order to bring about equality, yet it would, in the present instance, be in a measure a perver-sion of the law to reduce below its actual value by far the larger proportion of the property in the state subject to taxation for the purpose of avoiding an actual increase in the total valuation of all property. The statute does not limit the state board in the matter of equalization to the aggregate value as shown by the returns of all the different counties. Its provisions are that the board may increase

or decrease by per centum to be added to or deducted from the aggregate value of the different counties to make them conform to law. Of course, they have authority to equalize; and to equalize is to adjust differences in values so as to bring all to a common standard, and to the end that all property assessed shall bear its just proportion of the burdens of taxation. Where equalization is the main object and the increase resulting therefrom is incidental, we think the action is undoubtedly a legitmate exercise of the powers conferred upon the board. If the object appears to be to raise the aggregate of the total assessed valuation, such action would, in our judgment, have to be condemned as an unwarranted exercise of the authority to equalize. The subject has received some consideration from the court in *Suydam v. Merrick County,* 19 Neb. 155, under a statute which prohibited the raising or lowering of the total valuation of the assessment roll of the county. It is there said:

"It is the duty of the board to find this medium—that is, the mean between the lower and the higher values—adopt it as the true standard, and raise the one extreme and lower the other to it and thus leave the general result or common aggregate of valuation of the property of the whole county neither raised nor lowered, 'except in such an amount as may be actually necessary and incidental to a proper and just equalization.' " See also *Bardrick v. Dillon,* 7 Okla. 535, where it is held that a county board of equalization may adopt as the basis for equalization the assessment of a township which, in their judgment, most nearly represents the true cash valuation, and add to or deduct from other townships such per cent. as will cause them to conform in valuation to the one adopted as a basis, and this notwithstanding such action may either increase or decrease the aggregate valuation as shown by all the township returns. The rule as thus announced in the opinion cited is probably stated too broadly. The opinion apparently overlooks the fact that the valuation of property assessed for taxation is primarily for assessing

officers, and that boards of equalization except as conferred by statutes are not authorized to change the result, and then only in order to effectuate an adjustment of values so as to bring about uniformity. Our statute, we think, contemplates that the state board of equalization may equalize valuations as between the different counties in the sense the word is usually and ordinarily understood. That is, the state board is empowered to correct and adjust inequalities in valuation to the end that all property shall relatively be valued on the same basis for purposes of taxation, as near as the same is practicable. In either view of the subject, however, the action taken by the state board was within the scope of its powers, and the increase in the aggregate valuation of the equalized assessments resulted only incidentally to the main object sought to be accomplished.

5. We are asked to declare the order of the state board of equalization as of no validity and as being in conflict with the constitution respecting the raising of needful revenues by levying taxes on all property according to its valuation, on the ground that, as alleged in the petition, there was returned by certain of the taxpayers of Nemaha county certain sums of money which it is asserted were valued and assessed at the full, fixed and legal value thereof, and that the order complained of results in the assessment of this class of taxable property at a greater valuation than it actually possesses. To this it may be said that the plaintiff is not in a position to raise the question. The increase complained of on this item of property could, at most, affect only the taxpayers listing and returning such property for assessment, and the plaintiff is not one of them. While he professes to bring the action in behalf of himself and all others similarly situated, there are none situated as he is with respect to the assessment of this particular kind of property. He has not stated a cause of action in favor of himself, nor shown himself entitled to the relief he seeks, because of his allegations to the effect that some third parties whose situation is entirely dis-

similar have grounds of complaint which may possibly entitle them to some equitable relief in an independent action. If money on hand or in bank, such as has been returned for assessment purposes, because of its character and characteristics as having a fixed legal value is assessed for a greater sum than is permitted by law, then obtaining relief and redress for the grievance is a matter only for those who have thus been injured. Again, it is manifest that the state board of equalization is powerless to deal with particular items of property returned for taxation and included in the abstracts of assessment on which the board acts. The law provides that the board may equalize only by increasing or decreasing by a per centum of the aggregate valuation of all the property in the county affected by the order. Absolute equality is unattainable, and the law contemplates only that it shall be approached as nearly as may be found practicable. If it were shown that some other class of property was assessed by the county authorities at its full cash value, or for a greater amount, this would be no valid objection to equalizing the property of the county as a whole. The state board does not deal with individual assessments but with the property of a county as a whole, and if it appears to them to be assessed at a valuation relatively lower or higher than the property in all other counties, the whole is affected by the order of equalization, and not the different items or classes. Individual discrepancies and inequalities the law contemplates shall be corrected and equalized by the county authorities, and a taxpayer failing to avail himself of the opportunity thus presented has no legal ground of complaint because of the action of the state board of equalization in lowering or raising the valuation of all the property in the county so as to conform with all other property throughout the state. The county board is especially empowered to hear complaints and grievances as between individual taxpayers, and to adjust and remedy the same as may seem just and equitable. The state board possesses no such power. The taxpayer returning money at its legal value

could, if he felt aggrieved, complain that his property was assessed too high as compared with all other property. He has the right to insist that all property be valued on the same basis, and just ground of complaint if such was not done. *State v. Osborn,* 60 Neb. 415. Not having done so, he is presumed to have been satisfied, and the state board was warranted in assuming that all property of the county, of whatsoever kind, had been assessed on the same basis of valuation, and to equalize accordingly. They could presume, and probably did, that all of the money required to be listed had not in fact been returned, or that it was assessed at the same relative valuation as all other property. That tribunal was not bound to, and did not, take into consideration inequalities as between individual taxpayers, and could not under the law do so had it been so inclined. *Orr v. State Board of Equalization,* 3 Idaho, 190, 28 Pac. 416; *Wells, Fargo & Co. v. State Board of Equalization,* 56 Cal. 194; *State v. Thomas,* 16 Utah 86, 50 Pac. 615. We are not to be understood as holding that property, such as money, which has a fixed, definite and unvarying value, and regarding which there can exist no difference of opinion, may be assessed and the owner required to pay a tax on a value greater than it actually possesses. If such results follow from the acts of the state board which are complained of, we are clearly of the opinion that the proper remedy is not an attempt to nullify the action taken by the state board, nor will an injunction lie restraining the county officers from extending the per cent. of increase as certified by the board, nor will such an over-assessment of this one item of property affect the legality of the order of equalization, which directs that all property in the county be increased the amount of the percentage found necessary to make it conform to all other property throughout the state. Whether a taxpayer thus situated may find relief in a court of equity we need not here determine. But, if such can be done, it is obvious upon the soundest of equitable principles that an action would not lie until there had been paid or tendered the amount of tax

justly and legally due upon the face value of such property. Concerning a case of this character, we now have nothing to do, nor do we express any opinion thereon. A consideration of all questions presented by the record leads us to the conclusion that the state board of equalization acted within the scope of the powers conferred upon it by statute; that its order directing the increase which it made as affecting the county of Nemaha and the property of its taxpayers was valid, and that no provisions of the organic law are violated by its enforcement. It follows that it was and is the duty of the county clerk to extend the same upon the tax rolls of said county. The judgment of the trial court making the injunction perpetual is reversed, and the injunction suit is dismissed.

REVERSED.