(January 17, 1919.)

J. M. NEIL and CHARLES ORR, Plaintiffs, v. PUBLIC UTILITIES COMMISSION OF THE STATE OF IDAHO, JOHN W. GRAHAM, A. L. FREEHAFER and GEORGE E. ERB, as Members of said Commission, Defendants.

[178 Pac. 271.]

CONSTITUTIONAL LAW—JURISDICTION OF SUPREME COURT—CERTIORARI—MATTERS ARISING BEFORE PUBLIC UTILITIES COMMISSION.

1. The original jurisdiction of this court is fixed by the constitution and cannot be broadened or extended by the legislature.

2. When the constitution was adopted and ratified, jurisdiction was therein granted to this court to issue the writ of *certiorari* then known and in use in the territory of Idaho, and none other.

3. The appellate jurisdiction of the supreme court is limited by the constitution to the review of decisions of the district courts, or the judges thereof, and it cannot entertain an appeal directly from the public utilities commission.

Original proceeding to procure a writ of review directed to the public utilities commission. *Dismissed.*

B. W. Oppenheim and J. M. Lampert, for Plaintiffs.

"Where the judicial power of courts, either original or appellate, is fixed by constitutional provisions, the legislature cannot either limit or extend that jurisdiction." (*Chinn v. Superior Court,* 156 Cal. 478, 105 Pac. 580; *Marbury v. Madison,* 1 Cranch (U. S.) 137, 2 L. ed. 60, see, also, Rose's U. S. Notes.)

The legislature cannot impair the jurisdiction of a constitutional court either by preventing its exercise or creating a co-ordinate authority. (*Flanigan v. Guggenheim Smelting Co.,* 63 N. J. L. 647, 650, 44 Atl. 762; *Smith v. Livesey,* 67 N. J. L. 269, 51 Atl. 453; *Ex parte Thompson,* 85 N. J. Eq. 221, 96 Atl. 102, 106; *Public Service Electric Co. v. Board of Public Utility Commrs.,* 88 N. J. L. 603, 96 Atl. 1013.)

The jurisdiction of the courts as established by the constitution cannot be altered by the legislature. (*Thompson v. Williams,* 6 Cal. 88; *Hicks v. Bell,* 3 Cal. 219; *Burgoyne v. Supervisors,* 5 Cal. 9; *Parsons v. Tuolumne County Water Co.,* 5 Cal. 43, 63 Am. Dec. 76; *People v. Applegate,* 5 Cal. 295; *Fitzgerald v. Urton,* 4 Cal. 235; *Wilson v. Roach,* 4 Cal. 362; *Zander v. Coe,* 5 Cal. 230; *Haight v. Gay,* 8 Cal. 297, 68 Am. Dec. 323; *People v. Peralta,* 3 Cal. 379; *Caulfield v. Hudson,* 3 Cal. 389; *People v. Day,* 15 Cal. 91; *In re Jessup,* 81 Cal. 408, 21 Pac. 976, 22 Pac. 742, 1028, 6 L. R. A. 594.)

"Since the right of appeal in the absence of some constitutional authorization is purely of statutory origin, it exists only where expressly given, and cannot be extended to cases which do not come within the statute." (2 Cyc. 519.)

There can be no appeal from the decisions of a railroad commission to the courts except pursuant to express constitutional or valid statutory provision. (*State ex rel. Railroad Com. v. Wilmington & W. R. Co.,* 122 N. C. 877, 29 S. E. 334.)

The legislature cannot enlarge the scope of a writ beyond what it had at the time the constitution was adopted. (*Camron v. Kenfield,* 57 Cal. 550.)

The writ of *certiorari* lies only when there is a want or excess of jurisdiction in the proceeding complained of. (11 Corpus Juris, 103.) This is the limit and scope of the writ in this state. (*Utah Assn. of Credit Men v. Budge,* 16 Ida. 751, 102 Pac. 390, 691; *Canadian Bank of Commerce v. Wood,* 13 Ida. 794, 93 Pac. 257; *McConnell v. State Board of Equalization,* 11 Ida. 652, 83 Pac. 494.)

California, having the same statute, also has an unbroken line of decisions to the same effect. (*Gwinn v. Hamilton* (Cal.), 7 Pac. 837; *Sherer v. Superior Court,* 96 Cal. 653, 31 Pac. 565; *In re Tinn,* 148 Cal. 773, 113 Am. St. 354, 84 Pac. 152; *Times-Mirror Co. v. Superior Court of Los Angeles County,* 15 Cal. App. 515, 115 Pac. 248; *Karry v. Superior Court of San Joaquin County,* 162 Cal. 281, 122 Pac. 475, 128 Pac. 760.)

The writ is not issued for the purpose of reviewing or determining the "lawfulness" or the effect of an order or decision made by the inferior tribunal, but merely to ascertain and determine whether in making such order or decision the tribunal acted within its jurisdiction and in accordance with the rules prescribed for its action. (*Murphy v. Board of Equalization,* 6 Ida. 745, 59 Pac. 715; *Coeur d'Alene Min. Co. v. Woods,* 15 Ida. 26, 96 Pac. 210; *Gunderson v. District Court,* 14 Ida. 478, 94 Pac. 166; *Lansdon v. State Board of Canvassers,* 18 Ida. 596, 111 Pac. 133; *People v. Dwinelle,* 29 Cal. 632.)

"The officer or tribunal to whom the writ of *certiorari* is issued must be an inferior officer or tribunal, exercising judicial function, and the proceeding brought up for review must be a judicial proceeding." (*People v. Bush,* 40 Cal. 344, 346; *Quinchard v. Alameda Board of Trustees,* 113 Cal. 664, 45 Pac. 856; *Cook v. Civil Service Commission,* 160 Cal. 589, 117 Pac. 663.)

If upon the return to the writ it appears that the tribunal, in making the order, acted within its jurisdiction, the only action for the court is to discharge the writ and dismiss the proceeding. It has no jurisdiction, either to examine the validity of the order or determine its effect upon the rights of the petitioner. (*Central Pac. R. R. Co. v. Board of Equalization of Placer County,* 46 Cal. 667, 671; *Spring Valley Water Works v. Bryant,* 52 Cal. 133, 138; *Sherer v. Superior Court,* 96 Cal. 653, 654, 31 Pac. 565; 11 Corpus Juris, 103.)

If the order made by the tribunal while acting within its authority violates any constitutional right of the petitioner or invades any right of property, the remedy therefor must be sought in the court of original jurisdiction which has been provided therefor by the constitution. (*Public Service Gas Co. v. Board of Public Utility Commrs.,* 87 N. J. L. 597, 92 Atl. 606, 94 Atl. 634, 95 Atl. 1079, L. R. A. 1918A, 421.)

In making the order complained of herein, the public utilities commission was not, nor could it be, exercising any judicial function. (Public Utilities Reports 1917F, 617;

*People v. Board of Supervisors,* 122 Cal. 421, 423, 55 Pac. 131; *State v. Dunn,* 86 Minn. 301, 304, 90 N. W. 772; *Prentis v. Atlantic Coast Line Co.,* 211 U. S. 210, 226, 29 Sup. Ct. 67, 53 L. ed. 150, see, also, Rose's U. S. Notes.)

Sec. 20, art. 5, of the constitution confers upon the district courts original jurisdiction in all cases both at law and in equity, and such appellate jurisdiction as may be conferred by law. If the order made by the public utilities commission cannot be a judgment or decree, then said order, if violating any constitutional right of these plaintiffs or if it would cause any injury to their property, may be prevented upon an application to the proper district court. (*State ex rel. Railroad Commrs. v. Florida East Coast R. R. Co.,* 58 Fla. 524, 50 So. 425; *Inglin v. Hoppin,* 156 Cal. 483, 105 Pac. 582.)

T. A. Walters, Attorney General, and J. P. Pope, Assistant Attorney General, for Defendants, rely. on authorities cited in their brief in *Humbird Lumber Co. v. Public Utilities Commission, post,* p. 80, 178 Pac. 284.

MORGAN, C. J.—On December 11, 1917, the attorney general filed with the public utilities commission a complaint against plaintiffs herein in which it was alleged that they were common carriers engaged in operating a ferry upon the waters of Snake River for the transportation of persons and property for compensation, and that they had failed and refused, and were failing and refusing, to furnish facilities and to serve the public in the use thereof.

The plaintiffs above named answered the complaint of the attorney general and denied that they were common carriers and admitted that they had failed and refused, and were failing and refusing, to furnish facilities to serve the public in the use of the ferry. By way of separate answer they alleged that the ferry operated by them had always been operated as a private means of transportation; that it would be impossible and unlawful for them to operate a public ferry at the place where they cross Snake River; that there is

no public approach thereto, there being no public highway leading to the landing; also that an order compelling them to operate a public ferry at the place in question would amount to a confiscation of their property because there is not sufficient business to warrant the necessary expenditure involved in doing so.

Testimony was taken before the commission and it made and filed a decision consisting of findings of fact and an order, the latter being as follows:

"It is therefore ordered, That the defendants, J. M. Neil and Charles Orr, doing business under a partnership, or jointly or severally as owner, or owners, of that certain ferry across the Snake River, in the State of Idaho, commonly known and called 'Clark's Ferry,' be required to furnish such facilities and perform such services as may be requisite and necessary to meet all just and reasonable demands which may be made in the use of said ferry, and forthwith to file with the Public Utilities Commission of the State of Idaho a schedule of rates and charges for the transportation of persons and property thereon."

This action is brought for the purpose of procuring a review, by this court, of that decision and order in the manner provided for in sec. 63 (a) of the Public Utilities Act.

Since the arguments were heard grave constitutional questions have arisen causing this court to doubt its jurisdiction to dispose of the matter, as presented, and counsel in this case, as well as in *Humbird Lumber Co. v. Public Utilities Commission*, *post*, p. 80, 178 Pac. 284, which was pending at the same time and involved the same constitutional questions, were invited to submit, and they have submitted, briefs thereon.

Sess. Laws 1913, chap. 61, sec. 56, p. 282, provides that complaint may be made before the public utilities commission by any corporation or person, or by certain boards, associations or organizations therein named, setting forth any act or thing done, or omitted to be done, by any public utility in violation of any law or of any order or rule of the commission; that a copy of the complaint shall be served upon the

corporation or person complained of and that the commission shall fix the time when, and the place where, a hearing thereon will be had.   Sec. 57 of that chapter provides for a hearing, in the nature of a trial, and directs that, after its conclusion, the commission shall make and file an order containing its decision; also that, in case of an action to review such order, a transcript of the testimony, together with all exhibits or copies thereof introduced and of the pleadings, records and proceedings in the cause shall constitute the record of the commission; also that on such review of an order the parties and commission may stipulate that a question or questions alone and a specified portion of the evidence shall be certified to the court for its judgment, whereupon such stipulation and the question or questions and the evidence therein specified shall constitute the record on review.

Sec. 63 (a) provides: "Within thirty days after the application for a rehearing is denied, or, if the application is granted, then within thirty days after the rendition of the decision on rehearing, the applicant may apply to the Supreme Court of this state for a writ of *certiorari* or review . . . . for the purpose of having the lawfulness of the original order or decision or the order or decision on rehearing inquired into and determined. . . . . No new or additional evidence may be introduced in the Supreme Court, but the cause shall be heard on the record of the Commission as certified by it.   The review shall not be extended further than to determine whether the Commission has regularly pursued its authority, including a determination of whether the order or decision under review violates any right of the petitioner under the constitution of the United States or of the State of Idaho and whether the evidence is sufficient to sustain the findings and conclusions of the Commission.   The findings and conclusions of the Commission on questions of fact shall be regarded as *prima facie* just, reasonable and correct.   Such questions of fact shall include ultimate facts and the findings and conclusions of the Commission on reasonableness and discrimination. . . . . Upon  the  hearing  the  Supreme  Court

shall enter judgment either affirming or setting aside the order or decision of the Commission.''

Subd. (b) of sec. 63 is as follows: "If the Supreme Court shall decline on constitutional grounds to exercise the jurisdiction in this Act specified, either generally or in any class or classes of cases or in any particular case arising under this Act, then and in that event, but not otherwise, the district court within and for the county wherein any hearing has been had, or if had in more than two counties, the district court within and for the county where the hearing was commenced, shall have jurisdiction to issue a writ of review in the same manner, returnable within the same period, with the same effect and subject to the same limitations specified in Section 63a.''

Sec. 63 (c) provides for an appeal from the district court to the supreme court, and directs that the original transcript of the record filed in the district court, together with a transcript of the proceedings shall constitute the record upon such appeal.

The foregoing provisions of the law make necessary an interpretation of art. 5, sec. 9, of the constitution of Idaho, which is as follows: "The supreme court shall have jurisdiction to review, upon appeal, any decision of the district courts, or the judges thereof. The supreme court shall also have original jurisdiction to issue writs of *mandamus, certiorari,* prohibition, and *habeas corpus;* and all writs necessary or proper to the complete exercise of its appellate jurisdiction.''

Among the interesting constitutional questions presented are the following:

1. Is the jurisdiction of this court, original and appellate, fixed by the constitution, or may it be broadened and extended by the legislature? If it is so fixed, and if it may not be so broadened or extended:

2. Does sec. 63 (a) of the Public Utilities Act seek to broaden and extend the scope of the writ of *certiorari,* thereby rendering it a different writ than that recognized and understood when jurisdiction to issue it was conferred

upon this court, and, if so, does it, for that reason, conflict with art. 5, sec. 9, of the constitution?

3. If this proceeding is not *certiorari*, as contemplated and intended by that constitutional provision, but is an appeal, has this court jurisdiction to review, upon appeal, the actions of administrative boards, or officers, or is its appellate jurisdiction confined to the review of decisions of district courts, or the judges thereof?

In *Stein v. Morrison*, 9 Ida. 426, 75 Pac. 246, this court had under consideration the scope of the writ of prohibition. After quoting the portion of art. 5, sec. 9, of the constitution granting original jurisdiction to the supreme court, it said:

"This provision seems to have been taken literally from sec. 4, art. 6 of the constitution of California. The same provision was contained in the constitution of California as adopted in 1849 and again as adopted in 1862, and was finally readopted in the constitution of 1879. The legislature of California, in defining the writ of prohibition at sec. 1102, Code of Civil Procedure, used the identical language which was copied by our legislature and adopted as sec. 4994 of our Revised Statutes."

The supreme court of California, in 1878, decided the case of *Maurer v. Mitchell*, 53 Cal. 289, and said:

"By the fourth section of the sixth article of the constitution of the state the supreme court has power to issue writs of prohibition. We are all of the opinion that the writ mentioned in the constitution is the writ of prohibition as known to the common law." (See, also, *Spring Valley Water Works v. City and County of San Francisco*, 52 Cal. 111.)

After the decision of the California cases above mentioned the legislature of that state attempted to extend the scope of the writ of prohibition and it was held, in *Camron v. Kenfield*, 57 Cal. 550, decided in 1881, long prior to the drafting of our constitution, that the amendment was ineffectual to grant additional powers to the supreme court, for the reason that the word "prohibition" had been used in the constitution in the common-law sense of that term and that it was beyond the power of the legislature to extend the scope of the writ.

Our court, in *Stein v. Morrison,* citing, approving and applying *Camron v. Kenfield,* said: "When a statutory or constitutional provision is adopted from another state, where the courts of that state have placed a construction upon the language of such statute or constitution, it is to be presumed that it was taken in view of such judicial interpretation and with the purpose of adopting the language as the same had been interpreted and construed by the courts of the state from which it was taken," and held that the writ of prohibition, authorized by art. 5, sec. 9, of our constitution, is the writ which was known and recognized at common law.

The foregoing discussion of the limitations of the writ of prohibition which may be issued by the supreme court applies with equal force to the writ of *certiorari.* We derive our jurisdiction to issue these writs from one sentence of the constitution: "The supreme court shall also have original jurisdiction to issue writs of *mandamus, certiorari,* prohibition, and *habeas corpus,*" and it cannot be said that the framers of that document, when they drafted it, nor the people, when they ratified it, intended to limit our jurisdiction in case of prohibition to the kind of writ then known and in common use, but with respect to *certiorari,* intended that we should have such jurisdiction as the legislature might, from time to time, prescribe. The jurisdiction of this court is fixed by the constitution and cannot be broadened or extended by the legislature.

In case of *Pacific Teleph. & Teleg. Co. v. Eshleman,* 166 Cal. 640, Ann. Cas. 1915C, 822, 137 Pac. 1119, 50 L. R. A., N. S., 652, the supreme court of California, in a very instructive opinion, delivered by Henshaw, J., discussed the question now before this court. The legislature of that state had enacted a law for the regulation of public utilities, from which the portions of our law here under consideration have been taken, and the jurisdiction of that court to review, by *certiorari,* the decisions of the railroad commission was questioned. The court said: "In this consideration the first established fact is that sec. 67 of the public utilities act does, in violation of all precedent and decision, seek to enlarge the

purview of the writ of review. If the legislature has done this without sanction of the constitution, it would result merely in compelling a declaration from this court that the legislative attempt .was unwarranted, and that the writ of review must remain as defined at the time the constitution was adopted.''

In a concurring opinion in that case, Sloss, J., said: ''The courts of this state derive their powers and jurisdiction from the constitution of the state. The constitutional jurisdiction can neither be restricted nor enlarged by legislative act. An attempt to take away from the courts judicial power conferred upon them by the constitution, or to impose upon them judicial powers not granted or authorized to be granted by the constitution, is void. This declaration is not only in accord with the decisions elsewhere (*Marbury v. Madison,* 1 Cranch (U. S.), 137, 2 L. ed. 60, see, also, Rose's U. S. Notes), but has been held by this court from the early history of the state. (*Thompson v. Williams,* 6 Cal. 88; *Hicks v. Bell,* 3 Cal. 219; *Burgoyne v. Supervisors,* 5 Cal. 9; *Parsons v. Tuolumne County Water Co.,* 5 Cal. 43, 63 Am. Dec. 76; *People v. Applegate,* 5 Cal. 295; *Fitzgerald v. Urton,* 4 Cal. 235; *Wilson v. Roach,* 4 Cal. 362; *Zander v. Coe,* 5 Cal. 230; *Haight v. Gay,* 8 Cal. 297, 68 Am. Dec. 323; *People v. Peralta,* 3 Cal. 379; *Caulfield v. Hudson,* 3 Cal. 389; *In re Jessup,* 81 Cal. 408, 21 Pac. 976, 22 Pac. 742, 1028, 6 L. R. A. 594; *Tulare v. Hevren,* 126 Cal. 226, 228, 58 Pac. 530; *Chinn v. Superior Court,* 156 Cal. 479, 105 Pac. 580.) It is still the rule except in so far as it may have been modified by changes in the constitution itself.''

Our court adhered to this doctrine in *Dewey v. Schreiber Implement Co.,* 12 Ida. 280, wherein it held that an act of the legislature attempting to grant to probate courts jurisdiction to foreclose liens and mortgages was violative of the provisions of the clearly implied prohibition in art. 5, sec. 21, of the constitution.

Prior to the enactment of the law of California providing for the regulation and control of public utilities, the constitution of that state had been so amended as to create a railroad

commission and provided, among other things, as follows: "No provision of this constitution shall be construed as a limitation upon the authority of the legislature to confer upon the railroad commission additional powers of the same kind, or different from those conferred herein, which are not inconsistent with the powers conferred upon the railroad commission in this constitution, and the authority of the legislature to confer such additional powers is expressly declared to be plenary and unlimited by any provision of this constitution." It was further provided in the amendment: "The right of the legislature to confer powers upon the railroad commission respecting public utilities is hereby declared to be plenary and to be unlimited by any provision of this constitution."

Because of this amendment the California court reached a conclusion that it had jurisdiction in the class of cases to which this one belongs. Our constitution has not been so amended. It remains as it was when copied from that of California before its amendment and, therefore, the foregoing quotations from *Pacific Teleph. & Teleg. Co. v. Eshleman* apply to this case with persuasive force.

*Certiorari,* at common law, has been variously defined. Without quoting its definitions, or any of them, we will say that not a single instance has been brought to our attention where, up to the time of the ratification of our constitution, an effort had been made to give it the scope, in civil cases at law, or to put it to the use, attempted by the legislative act here under consideration, or to provide for it in any case where, in the opinion of the court, there is any other plain, speedy and adequate remedy.

Prior to the writing and ratification of the Idaho constitution in 1889, the writ of *certiorari* had been provided for, and its scope had been fixed, by statute. Rev. Statutes of the Territory of Idaho (1887), secs. 4961, 4962 and 4968, were as follows:

Sec. 4961: "The writ of *certiorari* may be denominated the writ of review."

Sec. 4962: "A writ of review may be granted by any court except a Probate or Justice's Court, when an inferior tribunal, board or officer exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, and there is no appeal, nor, in the judgment of the court, any plain, speedy and adequate remedy."

Sec. 4968: "The review upon this writ cannot be extended further than to determine whether the inferior tribunal, board or officer has regularly pursued the authority of such tribunal, board or officer."

These sections were the law when the constitution came into existence and had been for a long time prior thereto. There can be no doubt that the convention, when it adopted the constitution, and the people when they ratified it, and therein granted to this court power to issue the writ of *certiorari*, had in mind, intended to grant, and did grant jurisdiction over the writ then known and in use in the territory of Idaho, and none other. Nothing the legislature can do will serve to limit or extend our powers or duties in this particular. We are without power to grant the relief sought by the writ mentioned in Sess. Laws 1913, chap. 61.

This court has heretofore issued that writ in the cases of *Idaho Power etc. Co. v. Blomquist,* 26 Ida. 222, Ann. Cas. 1916E, 282, 141 Pac. 1083; *Federal Min. & Smelting Co. v. Public Utilities Commission,* 26 Ida. 391, 143 Pac. 1173, L. R. A. 1917F, 1195; *Murray v. Public Utilities Commission,* 27 Ida. 603, 150 Pac. 47, L. R. A. 1916F, 756, and *Coeur d'Alene v. Public Utilities Commission,* 29 Ida. 508, 160 Pac. 751.

In the Blomquist case the court discussed a number of constitutional questions, and while it held, in general terms, that the act here under consideration is not "repugnant to the provisions of the constitution of this state," it did not decide the points here under consideration. It is true the court at that time had before it the case of *Pacific Teleph. & Teleg. Co. v. Eshleman, supra,* and followed District Judge Wolverton in *Pacific Teleph. & Teleg. Co. v. Wright-Dickinson Hotel Co.,* 214 Fed. 666, disagreeing with the California court and

holding that the power to regulate within the purpose and spirit of the act includes the power to require physical connection between competing telephone lines, and that such power of regulation need not be specifically conferred by constitutional authority, but did not discuss, nor decide, the limitations which have been placed by the constitution upon the jurisdiction of this court. In the Idaho cases last above mentioned, other than the Blomquist case, none of these questions were considered. It is clear the rule of *stare decisis* does not apply.

While we would follow the precedents formed by the writ being issued in the above-cited Idaho cases, if permitted to do so, we must bear in mind that the constitution may only be amended in the manner therein provided for, and that its mandates are obligatory upon this court, even though some of them have been, for a time, overlooked and, therefore, disregarded.

We have all the powers granted to us by the constitution and may issue the writ of *certiorari* in all cases contemplated by art. 5, sec. 9 thereof, construed in the light of the law defining and limiting that writ when the constitution was written and ratified. That power is limited, as above indicated, and is dependent upon three circumstances which must co-ordinate, to wit: 1, That an inferior tribunal, board or officer exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer; and 2, there is no appeal; nor, 3, in the judgment of the court, any plain, speedy and adequate remedy.

The questions presented to the public utilities commission and here sought to be reviewed are: Were plaintiffs common carriers engaged in operating a ferry? Could they lawfully operate a public ferry? Would an order compelling them to operate a public ferry amount to a confiscation of their property?

These are purely judicial, not legislative nor administrative, questions, and can only be adjudicated in a court invested with judicial powers. The public utilities commission is not such a court. All of the judicial power of the

state is vested in ''a court for the trial of impeachments, a supreme court, district courts, probate courts, courts of justices of the peace, and such other courts, inferior to the supreme court, as may be established by law, for any incorporated city or town.'' (Const., art. 5, sec. 2.)

It is true section 61 of the Public Utilities Act provides: ''All orders and decisions of the commission which have become final and conclusive shall not be attacked collaterally,'' but it is too obvious for comment that the orders and decisions therein referred to are only those the commission is authorized to make, and that the section does not seek to confer upon it judicial powers in contravention of the constitution.

The order of the commission is neither final on nor conclusive of these questions, any, or all, of which may be presented to the courts for consideration and determination should an action be commenced against the plaintiffs looking to its enforcement, as the act provides may be done. In such event they will be at liberty to make any defense they may have and will not be precluded by the order here sought to be reviewed. Until an action is commenced no remedy is needed. (*Little v. Broxon,* 31 Ida. 303, 170 Pac. 918.)

It follows that we are also without power to grant the relief sought by the writ of *certiorari,* jurisdiction to issue which is conferred upon this court by art. 5, sec. 9, of the constitution.

In exercising the powers and discharging the duties conferred upon the public utilities commission by the legislature it may frequently be necessary for it to reach conclusions upon, and make decisions of, questions which can only be finally and conclusively adjudicated by the courts, and nothing in this opinion is to be construed as intending to hold that it has not that right.

The proceeding attempted to be provided for in sec. 63 (a) more nearly resembles our appellate than our original jurisdiction (*Idaho Power etc. Co. v. Blomquist; Murray v. Public Utilities Commission, supra,*) and we have given this phase of the question careful consideration with a view to

carrying out the legislative intent, if that can be done, by treating this case as being here on appeal. Our appellate jurisdiction is also fixed by art. 5, sec. 9, of the constitution, and is limited to the review of decisions of district courts, or the judges thereof, and we cannot entertain an appeal directly from the public utilities commission.

We desire that nothing stated in this opinion be understood to mean that it is beyond the power of the legislature to grant to district courts jurisdiction to issue the writ mentioned in sec. 63 (a), as provided for in sec. 63 (b) of the Public Utilities Act, or to empower those courts to review, upon appeal, the orders of the commission. These questions are not properly before us in this case, and we decline to express an opinion upon them. In this connection, however, it may be interesting to compare the constitutional powers of district courts with those of the supreme court, heretofore quoted and discussed. Art. 5, sec. 20, is as follows:

"The district court shall have original jurisdiction in all cases, both at law and in equity, and such appellate jurisdiction as may be conferred by law."

By way of recapitulation it may be said:

1. Because of the limitations placed upon its jurisdiction by the constitution, the supreme court cannot issue the writ mentioned in Sess. Laws, 1913, chap. 61, sec. 63 (a).

2. The relief sought in this action cannot be granted by the writ of *certiorari,* jurisdiction to issue which is conferred upon the supreme court by the constitution, because plaintiffs have a plain, speedy and adequate remedy, should one ever be needed.

3. This case cannot be considered an appeal from the public utilities commission, because the appellate jurisdiction of the supreme court is limited, by the constitution, to the review of decisions of district courts, or the judges thereof.

The case is dismissed. No costs are awarded.

RICE, J., Concurring.—I concur in the conclusion reached by the Chief Justice in this case.

The jurisdiction of the supreme court to issue the writ of *certiorari* is granted by the state constitution.

"It is settled that affirmative words in a constitution, that courts shall have the jurisdiction stated, naturally include a negative that they shall have no other." (*Lake v. Lake,* 17 Nev. 230, 30 Pac. 878.) ·

"The legislature cannot confer upon courts jurisdiction beyond that given, or authorized to be given, them by the constitution." (*People v. McKamy,* 168 Cal. 531, 143 Pac. 752.)

The principles announced in the above quotations appear to have been quite uniformly followed as the law, and as applicable to a state constitution granting jurisdiction to courts as well as to the federal constitution, since the decision in the case of *Marbury v. Madison,* 1 Cranch, 137, 2 L. ed. 60, see, also, Rose's U. S. Notes. See the case of *Ex parte Cox,* 44 Fla. 537, 33 So. 509, 61 L. R. A. 734, where many authorities are cited. In the case of *Boggess v. Buxton,* 67 W. Va. 679, 21 Ann. Cas. 289, 69 S. E. 367, it was held that the legislature had power to enlarge the scope of review in *mandamus* when issued by the supreme court of that state. However, the following observation of Williams, J., in his dissenting opinion in that case, seems to be well founded:

"If it be true that the legislature has power to confer original jurisdiction on this court in this case, by enlarging the writ of *mandamus,* as held in the majority opinion, it would necessarily follow that it has power to confer original jurisdiction in almost any case, simply by enlarging the scope of writs and remedies."

In *Stein v. Morrison,* 9 Ida. 426, 75 Pac. 246, the court had under consideration its power to issue the writ of prohibition. It was held that the power granted by the constitution was the power to issue the common-law writ of prohibition. This is persuasive authority for the conclusion that the supreme court is vested by the constitution with jurisdiction to issue only the common-law writ of *certiorari.* (See, also, *Dewey v. Schreiber Imp. Co.,* 12 Ida. 280, 85 Pac. 921.) While it is difficult to find an exact definition of the powers exercised under the common-law writ of *certiorari,* it may be stated that it is almost universally held that at common law *cer-*

*tiorari,* in civil causes, was available only to determine whether the inferior court, body or tribunal was regularly pursuing the authority vested in it by law. The proceedings under review might be quashed in case the inferior court or tribunal was acting without or in excess of its jurisdiction, or was not exercising its authority according to the established course of law. For practical purposes our statutory writ of review may be considered as coincident with the common-law writ of *certiorari.* (See *Whitney v. Board of Delegates,* 14 Cal. 479.)

The common-law writ was directed to the inferior board or tribunal and brought up for review the record only. (*Cass v. Duncan,* 260 Ill. 228, 103 N. E. 280; *State v. Live Oak, Perry & Gulf R. R. Co.,* 70 Fla. 564, 70 So. 550; *In re Dance,* 2 N. D. 184, 33 Am. St. 768, 49 N. W. 733.) The supreme court of this state, however, has held that the evidence may be certified to this court in cases where certain facts were necessary to the exercise of the jurisdiction to determine whether or not jurisdictional facts existed. (*Sweeny v. Mayhew,* 6 Ida. 455, 56 Pac. 85; *Cummings v. Steele,* 6 Ida. 666, 59 Pac. 15.) I think it is clear, however, that in no event can evidence be examined, under this writ, further than to determine whether the facts necessary to give the inferior tribunal jurisdiction existed or did not exist.

The judgment in *certiorari,* at common law, is either that the writ be quashed or that the proceedings reviewed be quashed. (11 C. J., p. 88, sec. 2; *Cass v. Duncan, supra.*) Under Rev. Codes, sec. 4969, the judgment may either affirm, annul or modify the proceedings below. I think, however, that the modification of the proceedings below could only consist of annulling or setting aside such portions of the proceedings as are in excess of the jurisdiction of the lower tribunal, or not according to the regular course of law.

The writ issues only to inferior courts or tribunals exercising judicial functions. There is no doubt that the public utilities commission exercises, and must, in the performance of its duties, exercise judicial functions. It cannot, of course, exercise judicial powers. This court would have power,

therefore, to issue the writ of *certiorari* to the public utilities commission should a proper case therefor arise.

On account of the limited scope of review permitted under the common-law writ of *certiorari*, this court cannot grant all of the relief provided for in section 63 (a) of the public utilities law. (*Pacific Telephone & Telegraph Co. v. Eshleman*, 166 Cal. 640. Ann. Cas. 1915C, 822, 137 Pac. 1119, 50 L. R. A., N. S., 652.) The concurring opinion of Sloss, J., in that case cannot aid us in the consideration of our statute, because of the much more extended review provided for in our statute. Under section 67 of the California statute, under consideration in that case, it is provided that the findings and conclusions of the commission on questions of fact shall be final and shall not be subject to review. Under our statute the review provided for is extended to the question of whether the evidence is sufficient to sustain the findings and conclusions of the commission, including its findings and conclusions on reasonableness and discrimination. The office of the common-law writ cannot be extended to a determination of whether the evidence is sufficient to sustain the findings and conclusions of the commission while acting within its jurisdiction. This proposition requires no citation of authorities, and is generally conceded.

Section 63 (b) of our statute is as follows:

"If the Supreme Court shall decline on constitutional grounds to exercise the jurisdiction in this act specified, either generally or in any class or classes of cases or in any particular case arising under this act, then and in that event but not otherwise the district court within and for the county wherein any hearing has been had, or if had in more than two counties, the district court within and for the county where the hearing was commenced, shall have jurisdiction to issue a writ of review in the same manner, returnable within the same period, with the same effect and subject to the same limitations specified in section 63 (a)."

If no provision were made for review, except that which might be had by the supreme court under the writ of *certiorari* which it has power to issue, it would follow that all

orders made by the public utilities commission, within its jurisdiction, are final and conclusive and not subject to review or modification, unless subject to attack on constitutional grounds. The legislature intended that the action of the commission should be subject to further investigation in the courts, and that the correctness of its conclusions and orders under the evidence should be inquired into. Under our constitution, as at present written, in cases in which it is desired that the propriety of the action of the commission be inquired into by the court, when the commission is acting within the scope of its jurisdiction, the writ must be issued out of the district court, which, under the constitution, may be vested with the power of review provided for in this act. This court can acquire jurisdiction in such matters only by appeals from the district courts, or the judges thereof. (Const., art. 5, sec. 9.) District courts are vested by the constitution with original jurisdiction in all cases of law and in equity, and with such appellate jurisdiction as may be conferred by law. (Const., art. 5, sec. 20.) The constitution further provides that the legislature shall regulate by law, when necessary, methods of procedure in the exercise of their powers of all the courts below the supreme court, so far as the same may be done without conflict with the constitution. (Const., art. 5, sec. 13.) Under these provisions of the constitution, the legislature may enlarge the scope of review which may be had by district courts in cases of *certiorari* to such extent as it deems advisable, or may provide for the exercise of powers incident to appellate jurisdiction in connection with what is termed a writ of review.

The writ will not issue in cases where there is an appeal, or in the judgment of the court, any other plain, speedy and adequate remedy. Section 63 (b), quoted above, authorizes a review not only as adequate as that which could be had under a writ of *certiorari* issued by this court, but one wider in its scope, and provision is also made in such cases for appeal to this court. The power exists in district courts, under the act in question, its exercise being conditional upon the action of this court.

This being a prerogative and discretionary writ, no absolute or fixed rule can exist by which it may be determined in every instance whether another plain, speedy and adequate remedy does exist. But the fact that, upon the determination of this court that it cannot exercise the jurisdiction provided in section 63 (a), the act itself provides for a review broader than this court could exercise in case it should issue the common-law writ of *certiorari*, is a cogent reason for declining to issue the writ which this court has jurisdiction to issue. Indeed, the act appears not to authorize this court to proceed at all under section 63 (a) unless it can exercise the jurisdiction therein specified.

BUDGE, J., Dissenting.—The attorney general filed with the public utilities commission a complaint, in which it was alleged that the plaintiffs were common carriers engaged in operating a ferry upon the waters of Snake River for compensation, but that they failed and refused to furnish adequate facilities for the use of the public or to serve the public as common carriers. The plaintiffs answered the complaint, denying that they were common carriers and admitting that they failed and refused to furnish facilities to serve the public in the use of the ferry, and setting out affirmatively that the ferry owned and operated by them had always been a private means of transportation, that it would be unlawful for them to operate a public ferry at the place where they crossed Snake River, since they and their predecessors had obtained no franchise or license to operate a public ferry, as required by Rev. Codes, sec. 1045; that there was no public approach or public highway either to or from the landing; that to compel them to operate as a common carrier would amount to confiscation of their property, since there is not sufficient business to warrant the necessary expenditure involved in doing so.

Upon a hearing had before the commission, the following order was made:

"It is therefore ordered, That the defendants, . . . . owners of that certain ferry across the Snake River, in the State of

Idaho, . . . . be required to furnish such facilities and perform such services as may be requisite and necessary to meet all just and reasonable demands which may be made in the use of said ferry, and forthwith to file with the Public Utilities Commission of the State of Idaho a schedule of rates and charges for the transportation of persons and property thereon.''

This proceeding was brought for the purpose of reviewing by writ of *certiorari* the decision and order above set out, as provided in sec. 63(a) of the Public Utilities Act.

Upon the argument of this cause, the only question submitted to this court for its decision was whether plaintiffs were operating a public utility, but after the cause had been submitted, and taken under advisement, questions involving the constitutionality of various sections of the Public Utilities Act were submitted to counsel.

The majority opinion appears to take the position that sec. 63(a) is unconstitutional, being in contravention of art. 5, sec. 9, of the constitution; and that the relief sought cannot be obtained under the constitutional writ, for the reason that that writ cannot be issued because there is a plain, speedy and adequate remedy at law.

Section 63(a) is as follows:

"Sec. 63(a). Within thirty days after the application for a rehearing is denied, or if the application is granted, then within thirty days after the rendition of the decision on rehearing, the applicant may apply to the Supreme Court of this State for a writ of *certiorari* or review (hereinafter referred to as a writ of review) for the purpose of having the lawfulness of the original order or decision or the order or decision on rehearing inquired into and determined. Such writ shall be made returnable not later than thirty days after the date of the issuance thereof, and shall direct the Commission to certify its record in the case to the court. On the return day, the cause shall be heard by the Supreme Court, unless for a good reason shown the same be continued. No new or additional evidence may be introduced in the Supreme Court, but the cause shall be heard on the record of the

Commission as certified by it.   The review shall not be extended further than to determine whether the Commission has regularly pursued its authority, including a determination of whether the order or decision under review violates any right of the petitioner under the Constitution of the United States or of the State of Idaho and whether the evidence is sufficient to sustain the findings and conclusions of the Commission.   The findings and conclusions of the Commission on questions of fact shall be regarded as *prima facie* just, reasonable and correct; such questions of fact shall include ultimate facts and the findings and conclusions of the Commission on reasonableness and discrimination.   The Commission and each party to the action or proceeding before the Commission shall have the right to appear in the review proceeding.   Upon the hearing the Supreme Court shall enter judgment either affirming or setting aside the order or decision of the Commission.   The provisions of the Code of Civil Procedure of this State relating to writs of review shall so far as applicable and not in conflict with the provisions of this Act, apply to proceedings instituted in the Supreme Court under the provisions of this section; *Provided,* That the writ of mandamus shall lie from the Supreme Court to the Commission in all proper cases.''

Art. 5, sec. 9, of the constitution is as follows:

''Sec. 9.   The Supreme Court shall have jurisdiction to review upon appeal, any decision of the District Courts, or the Judges thereof.   The Supreme Court shall also have original jurisdiction to issue writs of *mandamus, certiorari,* prohibition and *habeas corpus,* and all writs necessary or proper to the complete exercise of its appellate jurisdiction.''

It is insisted that sec. 63(a) seeks to broaden and extend the scope of the writ of *certiorari,* thereby attempting to confer upon this court jurisdiction in excess of that conferred by the constitutional provision above quoted; and that the writ of *certiorari* mentioned in the constitution must be held to be the writ as defined and limited by the Revised Statutes of the Territory of Idaho, 1887, secs. 4961, 4962 and 4968.   The case of *Stein v. Morrison,* 9 Ida. 426, 75 Pac. 246, is cited,

and an analogy drawn between the scope of the writs of prohibition and *certiorari.* From my examination of *Stein v. Morrison,* I am unable to see wherein this analogy supports the reasoning of the majority opinion. A similar contention was made in the earlier case of *Williams v. Lewis,* 6 Ida. 184, 54 Pac. 619, and this court in that case held that art. 5, sec. 9, of the constitution, in providing for the issuance of writs of prohibition, contemplated the issuance of such writs with the functions declared and defined under the existing territorial laws, but the later case of *Stein v. Morrison* overruled the case of *Williams v. Lewis,* and it was expressly held that the writ of prohibition authorized by the constitution is the common-law writ. Following the same reasoning, we should reach the conclusion that the writ of *certiorari* provided in the constitution is also the common-law writ.

The rule stated in the majority opinion was followed substantially by the supreme court of California in *People ex rel. Church v. Hester,* 6 Cal. 679, but the Hester case was expressly overruled on this point, and it was held that the California statute, from which our territorial statute was taken, was affirmatory of the common law (*Whitney v. Board of Delegates,* 14 Cal. 479, decided in 1860), and this was the rule recognized in California at the time our statute was adopted. It is, therefore, apparent that the writ of *certiorari* is the common-law writ.

The majority opinion recites that no case has been examined which gives the writ such a broad scope as is contemplated by sec. 63(a). The latter section, however, falls far short of being so broad and extensive as the writ known to the common law. (See *Commonwealth v. Balph et al.,* 111 Pa. St. 365, 3 Atl. 220, where the scope of the writ is elaborately reviewed.)

The language of sec. 63(a), *supra,* which is suggested as extending the scope of the writ, is that part reading as follows:

" . . . . including a determination of whether the order or decision under review violates any right of the petitioner under the Constitution of the United States or the Constitu-

tion of the State of Idaho, and whether the evidence is sufficient to sustain the findings and conclusions of the Commission.''

The majority opinion in support of its holding cites the case of *Pacific Telephone & Telegraph Co. v. Eshleman,* 166 Cal. 640, Ann. Cas. 1915C, 822, 137 Pac. 1119, 50 L. R. A., N. S., 652, and while it is true that the opinion of Henshaw, J., would seem to support that view, a careful examination of the whole case reveals the fact that no such principle of law can be regarded as established by the decision. Sloss, J., who wrote the concurring opinion, a portion of which is also quoted in the majority opinion herein, expressly took the view that sec. 67 of the California act—substantially the same as our sec. 63(a), *supra*—did not extend the scope of the writ or the jurisdiction of the court thereunder, as vested in the court by the constitution, and pointed out that in so far as questions raised should relate to the jurisdiction of the commission the court might necessarily have to determine whether an order deprived a party of any right secured to him by the constitution of the United States or of that state, and that the court would possess the same power to issue the writ, and that the hearing upon the writ after it was issued would have the same scope under the constitutional provision, whether sec. 67 had been written into the act or not. It should be noticed that two of the justices, Lorigan and Melvin, concurred in the views of Henshaw, J., and two of the justices, Shaw and Angellotti, agreed with the views of Sloss, J., so that upon this question the California court was equally divided, and it is the established rule in California, ''that any proposition or principle stated in an opinion is not to be taken as the opinion of the court unless it is agreed to by at least four of the justices.'' (*Delmar Water, Light & Power Co. v. Eshleman,* 167 Cal. 666, 140 Pac. 948.) The latter quotation is from an opinion on rehearing, where it was held that an opinion written in the case on original hearing as a concurring opinion ''contains the only propositions which are to be considered as decided,'' for the reason above given. It is apparent, therefore, that the case relied upon

by the majority opinion does not hold, and cannot be regarded as authority for the proposition that sec. 67 of the California act—substantially the same as sec. 63(a) of our own act—enlarges the scope of the writ of *certiorari* or the jurisdiction of the court under the writ.

An examination of the language of sec. 63(a), *supra*, convinces me that the criticism thereof does not rest upon sound principles of statutory interpretation. The provision that "the review shall not be extended further than to determine whether the commission has regularly pursued its authority" is admittedly proper, as that is the language of sec. 4968, in existence at the time the constitution was adopted, and it is well settled that the clause "whether it has regularly pursued its authority" is the equivalent of "whether it has exceeded its jurisdiction." (Concurring opinion of Sloss, J., in *Pacific Telephone & Telegraph Co. v. Eshleman, supra; Central P. R. Co. v. Board of Equalization*, 43 Cal. 365; *Quinchard v. Alameda*, 113 Cal. 664, 45 Pac. 856.)

And so as to the language under criticism, in determining whether or not the commission has exceeded its jurisdiction, the court will determine whether the order or decision under review violates any right of the petitioner under the federal or state constitutions, and this determination under the plain language of the section is to be confined solely to its bearing upon the question of whether the commission has exceeded its jurisdiction. Upon this point, reference is again made to the concurring opinion of Sloss, J., *supra*. So, also, as to the last clause under criticism, to the effect that in determining whether the commission has exceeded its jurisdiction, the court may examine the evidence to determine if it is sufficient to sustain the findings and conclusions of the commission. This examination of the sufficiency of the evidence, in connection with the findings and conclusions, is clearly limited by the language of the act to its bearing upon whether the commission has exceeded its jurisdiction. This is not a new principle, but is one which has been repeatedly asserted by this court in its decisions upon *certiorari*, and this court has held that it may review the evidence at least in so far as it is

essential to determine the jurisdictional question. (*Sweeney v. Mayhew,* 6 Ida. 455, 56 Pac. 85; *First National Bank of Weiser v. Washington County,* 17 Ida. 306, 105 Pac. 1053; *Lansdon v. State Board of Canvassers,* 18 Ida. 596, 111 Pac. 133; *Salt Lake City v. Utah Light & Traction Co.* (Utah), 173 Pac. 556.)

This jurisdiction to review the evidence essential to determine the jurisdictional question is full and complete, and no finding of the commission with respect to a jurisdictional question is binding upon this court. The purpose of the writ is to ascertain, first, whether the commission had any jurisdiction; second, whether it exceeded its jurisdiction if it had any. If this court is to be bound by the findings of the commission upon the question of jurisdiction, one of the prime objects of issuing the writ would be eliminated entirely from our consideration. This question, it seems to me, has been put to rest by the supreme court of California, in the Whitney case, *supra,* where the court said:

" . . . . the cases are numerous to the effect that the review may be extended to every issue of law and fact involved in the question of jurisdiction, and that not only the record, but the evidence itself, when necessary for the determination of this question, must be returned. The latter is the more reasonable, and, we think, the true rule. The reasons upon which it is founded are well stated by the Court of Appeals of New York, in the case of *The People ex rel. Bodine v. Goodwin* (1 Selden [5 N. Y.] 568). The case arose under a statute of that State, by which the Commissioners of Highways were empowered, under certain circumstances, to lay out and open roads, but were prohibited from opening a road through any building without the consent of the owner. The question was, whether the Court could, upon a common law *certiorari,* review the evidence upon an issue in the case, as to whether the consent of the owner had in fact been obtained; and it was held, that as this was a jurisdictional fact, the existence of which was absolutely essential to give any validity to the proceedings of the Commissioners, the evidence in relation to it was properly returned, and was entitled to be

considered. 'Neither the Commissioners of Highways,' said the Court, 'nor the referees on appeal from their decision, have power to lay out a road, public or private, through any building without the consent of the owner. There was a barn standing on the land laid out for the highway in controversy; and unless the owner's consent was given that the highway should be so laid out, the referees in laying it out acted without authority, and their proceedings were void for want of jurisdiction. Inferior magistrates, when required by writ of *certiorari* to return their proceedings, must show affirmatively that they had authority to act; and where, as in the present case, their authority and jurisdiction depend upon a fact to be proved before themselves, and such fact be disputed, the magistrate must certify the proofs given in relation to it, for the purpose of enabling the higher Court to determine whether the fact be established. The decision of the magistrate in relation to all other facts is final and conclusive, and will not be reviewed on a common-law *certiorari.* But the main object of this writ being to confine the action of inferior officers within the limits of their delegated powers, the reviewing Court must necessarily re-examine, if required, the decision of the magistrate on all questions on which his jurisdiction depends, whether of law or of fact. The evidence, therefore, to prove the consent of the owner of the land to the laying out of the road was properly stated in the return, and is properly examinable here.' In view of the great conflict of authority upon this subject, we content ourselves with the expression of our concurrence in the reasoning and conclusions of the Court in that case.'' (*Whitney v. Board of Delegates,* 14 Cal. 479 at 500.)

See, also, on this point, *In re Dance,* 2 N. D. 184, 33 Am. St. 768, 49 N. W. 733, and cases cited in note to *Whitney v. Board of Delegates,* Book 5, Pac. St. Rep. 718.

It is apparent, then, that sec. 63(a), *supra,* does not extend or enlarge the jurisdiction of this court, and, therefore, does not contravene the constitutional provision referred to in the majority opinion, viz., art. 5, sec. 9.

In the majority opinion the question is propounded:

"Does sec. 63(a) of the public utilities act seek to broaden and extend the scope of the writ of *certiorari,* thereby rendering it a different writ than that recognized and understood when jurisdiction to issue it was conferred upon this court, and if so, does it for that reason conflict with art. 5, sec. 9, of the constitution?"

There is but one writ of *certiorari,* and that is the constitutional writ, and the constitutional investiture of jurisdiction to issue it is a limitation upon the power of the legislature and in the nature of a grant of power to the courts. Sec. 63(a) is descriptive of the writ, but neither adds to nor detracts from the power of the court. Should it become necessary, the entire section may be disregarded, and the constitutional right to issue the writ, and the powers thereunder, would be neither curtailed nor enlarged. (*Public Service Gas Co. v. Board of Public Utility Commrs.,* 87 N. J. L. 597, 92 Atl. 606, 94 Atl. 634, 95 Atl. 1079, L. R. A. 1918A, 421.)

This is a proceeding in *certiorari,* and not an appeal, and is brought for the sole purpose of determining whether the public utilities commission exceeded its jurisdiction. There is no appeal provided by statute from an order or decision of the public utilities commission. Neither is the writ mentioned in sec. 63(a) in the nature of an appeal. While it is true that this court in the case of *Idaho Power Co. v. Blomquist,* 26 Ida. 222, at 256, Ann. Cas. 1916E, 282, 141 Pac. 1083, 1094, said: "This court is there [referring to sec. 63(a)] given substantially the same authority in reviewing such orders as on appeal," the language there used is clearly *obiter dictum,* as such a holding was not essential to a decision of the case, nor necessarily involved in the conclusion reached.

If, as insisted in the majority opinion, this court is without jurisdiction to issue the writ prayed for, and has no authority to issue the constitutional writ because plaintiffs have a plain, speedy and adequate remedy at law, it becomes necessary to determine whether there is a plain, speedy and adequate remedy at law, of which plaintiffs may avail them-

selves. Since I have reached the conclusion that there is but one writ, viz., the constitutional writ, and that this court has power to issue the writ for the purpose herein stated, it will be necessary to determine whether the plaintiffs have a plain, speedy and adequate remedy at law.

The examination into the jurisdictional questions on *certiorari* or review is limited to cases where there is no appeal, nor in the judgment of the court any plain, speedy and adequate remedy. The first clause may be eliminated from consideration, for it cannot be successfully contended that any appeal from the orders of the public utilities commission has been provided. Is there any plain, speedy and adequate remedy? The majority opinion takes the position that there is an adequate remedy, for the reason that whenever the commission begins an action in the district court to enforce its orders, the utility may defend its rights and have them determined, and further that until such an action is commenced no remedy is needed.

If it were established in an action to enforce the commission's order that the commission had jurisdiction, then, under the sections of the statute hereafter cited, and without now passing on the legality of the same, the company would not only be required to obey the order of the commission, but, under the provisions of sec. 72(a) of the act, would subject itself to a penalty of "not more than $2,000 for each and every offense," and under the provisions of sec. 72(b) every violation is a separate and distinct offense, and "in case of a continuing violation each day's continuance thereof shall be and be deemed to be a separate and distinct offense." The law further provides that "every officer, agent or employee of any public utility who violates or fails to comply with, or who procures, aids or abets any violation by any public utility," etc., "is guilty of a misdemeanor and is punishable by a fine not exceeding one thousand dollars, or by imprisonment in a county jail not exceeding one year, or by both such fine and imprisonment."

It would seem to be apparent that the so-called remedy which the utility has by way of defense—and the same penal-

ties might apply to a small as well as a large operator of a public utility—is beset by such dangers, in case the decision or order of the commission should be ultimately upheld, that as a practical matter no utility, or no officer or agent of such utility, would dare question or disobey an order of the commission in the first instance. Can it be said, then, that a utility has a plain, speedy and adequate remedy, when such remedy can only be had by way of defense to an action brought against the utility, and when, if the case were decided adversely to it, both the utility and its officers and agents might thereby be subjected to enormous fines and imprisonment, incident to testing the rightfulness of the commission's order or decision? To decide this in the affirmative, would be virtually to deprive a utility of the power to test the lawfulness of the commission's order or decision, and to give the commission unlimited power, which was clearly not intended by the act. (*Wadley Southern Ry. Co. v. Georgia,* 235 U. S. 651, 35 Sup. Ct. 214, 59 L. ed. 405, see also, Rose's U. S. Notes.)

While, upon the other hand, should the public utilities commission authorize a utility to establish and collect exorbitant rates for services rendered the public, the delays in bringing about a correction of the wrong thus imposed would result in unnecessary hardships to the patrons of the utility, which would necessarily follow if the procedure indicated in the majority opinion is correct. The very purpose of the utilities act was to bring about a speedy and final determination of all disputed matters that might arise between utilities and the patrons thereof.

"It is a rule of general application that *certiorari* is not an appropriate remedy if efficient relief can be, or could have been, obtained by a resort to other *available* modes of redress or review." (6 Cyc. 742.) It cannot be said that the remedy by way of defense is *available* to the utility. It is not a remedy which may be asserted affirmatively against the commission, but is contingent on the action of the commission in enforcing such order.

"So too where such other remedy is inadequate, and more expeditious and efficient relief can be afforded by this writ, it may be granted, although another mode of redress is available." (6 Cyc. 745.)

The rule is stated by the supreme court of Missouri in the following language:

"An adequate remedy is a remedy which is equally beneficial, speedy and sufficient, not merely a remedy which at some time in the future will bring about a revival of the judgment in the lower court complained of in the *certiorari* proceeding, but a remedy which will promptly relieve the petitioner from the injurious effects of that judgment and the acts of the inferior court or tribunal. (*People ex·rel. v. Commissioners,* 66 How. Pr. (N. Y.) 293; *Kirby v. Superior Court,* 68 Cal. loc. cit. 605, [10 Pac. 119]; *Havemeyer v. Superior Court,* 84 Cal. loc. cit. 398, [18 Am. St. 192, 24 Pac. 121, 10 L. R. A. 627]; *People ex rel. v. Head,* 25 Ill. 325; *King v. Railroad,* 2 B. & Ald. 646; *People v. Mayor,* 10 Wend. (N. Y.) 395; *People v. State Ins. Co.,* 19 Mich. loc. cit. 396; *North Alabama Dev. Co. v. Orman,* 71 Fed. 764, [18 C. C. A. 309]; *Memphis & C. R. Co. v. Brannum,* 96 Ala. 461, [11 So. 468]; *State ex rel. v. Elkin,* 130 Mo. 90, [30 S. W. 333, 31 S. W. 1037]; *State ex rel. v. Rost,* 49 La. Ann. 1454, [22 So. 421]; *State ex rel. v. Hirzel,* 137 Mo. 447, [37 S. W. 921, 38 S. W. 961]; *State ex rel. v. Aloe,* 152 Mo. 466, [54 S. W. 494, 47 L. R. A. 393], and many other authorities." (*State ex rel. Hamilton v. Guinotte,* 156 Mo. 513, 57 S. W. 281, 50 L. R. A. 787, and note. See, also, *State ex rel. Garth v. Switzler,* 143 Mo. 287, 65 Am. St. 653, 45 S. W. 245, 40 L. R. A. 280.)

The purpose of the utilities act was to regulate public utilities, to avoid unnecessary delay in the interest of public service, and to grant speedy and adequate relief from oppressive orders of the commission. All orders of the commission vitally affect both the public and the utility. While the commission, under the act, has authority to bring an action to enforce its orders or decrees, there is no like remedy to which a utility may affirmatively resort to determine whether

the orders of the commission are lawful and binding.  Should the commission find that a utility absolutely refused to serve the public or a portion thereof, or in serving the public charged an exorbitant and unreasonable rate, to deny the utility the authority to make application to this court for writ of *certiorari,* and deny this court the power to issue the writ and review the proceedings of the commission for the purpose herein indicated, would be a denial of a speedy and adequate remedy to the public and to the utility as contemplated by the act.

It will be remembered that the constitutionality of the act creating the commission is not involved, but the original jurisdiction of this court to review the orders and decisions of the commission in a proceeding in *certiorari* is questioned. It is insisted in the majority opinion that this court is without authority to issue the writ defined in the act or to review the proceedings of the utilities commission for the purpose of determining its jurisdiction, by writ of *certiorari,* and it is suggested that the right to review the orders and decisions of the public utilities commission is vested in the district court in the first instance.  This may or may not be true.  The question of the jurisdiction of the district court is not before us in this proceeding for determination.

Upon another phase of the case, the majority opinion says:

"The questions presented to the Public Utilities Commission and here sought to be reviewed are: Were plaintiffs common carriers engaged in operating a ferry; could they lawfully operate a public ferry; would an order compelling them to operate a public ferry amount to a confiscation of their property?

"These are purely judicial, not legislative nor administrative, questions, and can only be adjudicated in a court invested with judicial powers.  The Public Utilities Commission is not such a court.  All of the judicial power of the State is vested in 'A court for the trial of impeachments, a supreme court, district courts, probate courts, courts of justices of the peace, and such other courts, inferior to the

supreme court, as may be established by law, for any incorporated city or town.' Const., Art. 5, Sec. 2.''

While it is true that the determination of these questions necessitates the exercise of judicial functions, they are questions which the public utilities commission must determine, and in their determination the commission must *ex necessitate* act in a judicial manner, but these questions are all preliminary so far as the administrative function of the commission is concerned, viz., the ascertainment of what is reasonable service and what are reasonable rates, and the entering of the commission's order calculated to carry these ultimate findings into effect. The investiture of all the judicial power of the state in the certain designated courts does not to any extent militate against the necessary exercise of such judicial functions as are involved in the determination of these preliminary questions, but the fact that the commission does exercise judicial functions clearly gives this court jurisdiction to intervene and to supervise and control, in a proceeding upon *certiorari,* the acts of the commission, whenever that body acts either without or in excess of its jurisdiction.

The authorities are many and well considered that judicial functions may be exercised by bodies possessing no judicial power whatever, and no attempt will be made to make an exhaustive citation of the authorities so holding. One of the leading cases is *Drainage Dist. Commrs. v. Griffin et al.,* 134 Ill. 330, 25 N. E. 995, where many instances are given.

The distinction between an investiture of judicial power and the exercise of a judicial function was pointed out by the supreme court of the United States in an early case, where the court said:

''The powers conferred by these Acts of Congress upon the judge as well as the Secretary, are, it is true, judicial in their nature. For judgment and discretion must be exercised by both of them. But it is nothing more than the power ordinarily given by law to a commissioner appointed to adjust claims to lands or money under a treaty; or special powers to inquire into or decide any other particular class of con-

troversies in which the public or individuals may be con-
cerned. A power of this description may constitutionally be
conferred on a Secretary as well as on a commissioner. But
it is not judicial in either case, in the sense in which judicial
power is granted by the Constitution to the courts of the
United States.'' (*United States v. Ferreira,* 13 How. 40,
48, 14 L. ed. 42, at 45, see, also, Rose's U. S. Notes.)

In an early case, this court expressly held that:

''The state board of equalization, in exercising the func-
tions conferred upon it by law, was exercising judicial func-
tions. (*People v. Goldtree,* 44 Cal. 323; *Mayor v. Comp-
troller,* 92 N. Y. 604).'' (*Orr v. State Board of Equalization,*
3 Ida. 190, 28 Pac. 416.)

The latter case was quoted as authority by the supreme
court of Alabama in a recent case. In the Alabama case a
contention, identical in principle with the position taken by
the majority opinion herein, was made, based upon sec. 43 of
the Alabama constitution, which provides that:

''43. In the government of this State, except in instances
in this constitution hereinafter expressly directed or per-
mitted, the legislative department shall never exercise the
executive and judicial powers, or either of them; the execu-
tive shall never exercise the legislative and judicial powers,
or either of them; the judicial shall never exercise the legis-
lative and executive powers, or either of them; to the end that
it may be a government of laws and not of men.''

The court said:

''It must be noted that the State Tax Commission have the
authority to set aside a final assessment made by the commis-
sioners' court, and in doing this there is no invasion by one
department of the state of the province of another, as pro-
hibited by section 43 of the Constitution. If the act of the
board of revenue or commissioners' court in fixing the valua-
tion is a judicial act, then the act of the state board in vacat-
ing same and reassessing the property is also a judicial act.
On the other hand, if we concede the appellee's contention
that the action of the state board is not judicial, but is a
ministerial act of legislative or executive character, the con-

cession would put the petitioner . . . . out of court. . . . . We think, however, that the action of both boards is judicial in character, and that the Legislature is not prohibited by section 43 of the Constitution from authorizing one to revise, review, or annul the action of the other, and this authority is given the State Tax Commission with reference to all other subordinate boards or officers charged with the duty of assessing taxes and valuing property. 'The State Board of Equalization, in exercising the functions conferred upon it by law, is exercising judicial functions.' *Orr v. State,* 3 Ida. (Hasb.) 190, 28 Pac. 416." (*State Tax Commission et al. v. Bailey & Howard,* 179 Ala. 620, 626, 60 So. 913, at 915.)

The writ was entertained by this court in a proceeding against the state wagon road commissioner. (*Dunn v. Sharp,* 4 Ida. 98, 35 Pac. 842.)

And in *McKnight v. Grant,* 13 Ida. 629, at 637, 121 Am. St. 287, 92 Pac. 989, 990, this court made use of the following pertinent language:

"On the other hand, section 13, of article 5, of the constitution was never intended to prohibit other departments of the state government than the judicial from exercising *some judicial or quasi judicial functions.* We think by this provision it was rather intended to preserve to the judicial department of the state government the right and power to finally determine controversies between parties involving their rights and upon whose claims some decision or judgment must be rendered or determination made. (23 Cyc. 1613–1623, and notes; *In re Saline Co. Subscription,* 45 Mo. 52, 100 Am. Dec. 337; *De Camp v. Archibald,* 50 Ohio St. 618, 40 Am. St. 692, 35 N. E. 1056; *In re Walker,* 74 N. Y. Supp. 94, 68 App. Div. 196; *State v. Le Clair,* 86 Me. 522, 30 Atl. 7; Century Dictionary, 'Judicial Power.') It is a matter of common knowledge to every student of the law that in this country, notwithstanding this constitutional provision to be found in all the states, nevertheless almost every executive, ministerial and administrative officer has, in many instances, to exercise judgment and discretion of a *quasi* judicial nature, and yet the citizen or party who may deem himself aggrieved thereby

still has his remedy in the courts. No one has claimed, however, that such officers may not exercise those necessary powers in the discharge of their duties. The exercise of such power is in no respect an invasion of the judicial power reserved to the courts by the constitution.''

While the court in the latter case had under consideration sec. 13 of art. 5, the principle involved is identical with the one discussed by the majority opinion in connection with sec. 2 of art. 5.

In every case before the public utilities commission, it must, in the first instance, determine from the evidence before it whether the utility with which it is seeking to deal is a public utility, for unless it be a public utility, the commission is without any jurisdiction over it whatsoever, and this determination can only be made by the exercise of judicial functions. The importance of this fact in connection with our jurisdiction under the writ of *certiorari,* and the extent to which our supervision upon this jurisdictional question must extend, has already been sufficiently considered.

The Public Utilities Act was held constitutional by this court in *Idaho Power Co. v. Blomquist, supra,* a proceeding brought and disposed of in this court under sec. 63(a). Similar proceedings have been instituted and jurisdictional questions involved in orders of the public utilities commission reviewed under this section in *Federal Mining & Smelting Co. v. Public Utilities Commission,* 26 Ida. 391, 143 Pac. 1173, L. R. A. 1917F, 1195; *Murray v. Public Utilities Commission,* 27 Ida. 603, 150 Pac. 47, L. R. A. 1916F, 756; *Coeur d'Alene v. Public Utilities Commission,* 29 Ida. 508, 160 Pac. 751.

While it is true, as stated in the majority opinion, ''that the constitution may only be amended in the manner therein provided for, and that its mandates are obligatory upon this court, even though some of them have been for a time overlooked, and, therefore, disregarded''; still entertaining as I do the views herein expressed, I am unable to see wherein the statement quoted, applies to this case. In issuing the writ, we are well within the constitutional investiture of power in

this court, and we owe the same duty to preserve the constitutional powers of this court that we owe to the enforcement of any other constitutional provision, and for my part I am unwilling that this court should voluntarily surrender any of its constitutional authority.

For the reasons above given, I am of the opinion that this case should not be dismissed, but is here for examination and determination upon every jurisdictional question presented, and that it is the duty of this court in pursuing its investigation to go fully into the record and the evidence bearing upon the jurisdictional question, whether or not the utility in question is in fact a public utility, for if the plaintiffs are not in fact operating a public utility, the commission is wholly without jurisdiction, and its order should be vacated.